464 So.2d 459 (1985)
STATE of Louisiana
v.
Wash MULLINS, Jr.
No. KA 84 0882.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
Ossie Brown, Dist. Atty. by Brenda Creswell, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Kathleen S. Richey, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
*460 LANIER, Judge.
The defendant, Wash Mullins, Jr., was charged by grand jury indictment with second degree murder in violation of La.R.S. 14:30.1. He pled not guilty. After a trial by jury, he was found guilty and was sentenced to serve life imprisonment at hard labor in the custody of the Louisiana Department of Corrections without benefit of probation, parole or suspension of sentence. This appeal followed.

FACTS
Esther Mae Walker (nicknamed Jean) lived with the defendant for approximately seven years prior to leaving him in April of 1983. After Walker left the defendant, she occasionally stayed with Jessie London.
On July 1, 1983, Walker asked London to drive her to her sister's home on 73rd Street in the Scotlandville community of East Baton Rouge Parish, Louisiana. When London and Walker reached the neighborhood where Walker's sister lived, they observed the defendant, who also observed them. London tried to elude the defendant, but the defendant followed them in his vehicle. London was in the inside southbound lane of Scenic Highway when he had to stop for a red light at Scenic's intersection with 72nd Street. The defendant drove his vehicle adjacent to the right side of the London vehicle in the other lane of traffic. The defendant exited his vehicle and fired a shot into the London vehicle through its right front window. London and Walker exited the London vehicle through the left front door. The defendant went around the London vehicle, confronted London and shot him in the chest. London staggered across the street to an auto repair business and sought help. Walker had fallen to the ground, and the defendant approached her and fired shots into her until his gun was empty.
The defendant got into his vehicle, departed the scene of this incident and went to the home of his sister and brother-in-law. The defendant's relatives persuaded him to turn himself in. He did so at the Scotlandville substation of the East Baton Rouge Parish Sheriff's Office. Upon request, the gun used in this incident was turned over to the police. The defendant was subsequently released to officers of the Baton Rouge City Police Department to whom he gave a statement.

CONSTITUTIONALITY OF ACT 495 OF 1983

(Assignment of Error 1)
Prior to Act 495 of 1983, La.C. Cr.P. art. 799 provided for twelve peremptory challenges for a defendant in a trial of an offense punishable by death or necessarily by imprisonment at hard labor. Act 495 reduced that number to eight. The defendant is charged with committing the offense of second degree murder on July 1, 1983. The effective date of Act 495 of 1983 was August 30, 1983. La. Const. of 1974, art. III, § 19. The trial of this case commenced on January 16, 1984. The defendant was only allowed eight peremptory challenges at the trial.
The defendant contends Article 799, as amended by Act 495 of 1983, is unconstitutional because it deprives him of his right to a full and effective voir dire examination and his right to an impartial trial. In the alternative, the defendant contends that if Article 799, as amended, is constitutional, its application to him is unconstitutional because the offense for which he is charged occurred prior to the effective date of the amendment.
This assignment of error is without merit. State v. Bennett, 454 So.2d 1165 (La. App. 1st Cir.1984), writ denied, 460 So.2d 604 (La.1984).

SUFFICIENCY OF EVIDENCE

(Assignment of Error 3)[1]
The defendant filed a motion for a post verdict judgment of acquittal, pursuant to *461 La.C.Cr.P. art. 821, contending the evidence presented at trial did not permit a finding of guilty of second degree murder or, in the alternative, the evidence viewed in the light most favorable to the State only supported a conviction of manslaughter because the State failed to prove the essential element of specific intent. In brief, the defendant contends that at the time he shot Walker his blood was heated and passion controlled his actions because he had argued with Walker over a substantial sum she had taken from him, she had cursed him and she had used his photograph to put a voodoo curse on him.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
A plea of not guilty places upon the State the burden of proving beyond a reasonable doubt each element of the crime with which the defendant is charged. La. R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La. 1981); State v. Gomez, 433 So.2d 230 (La. App. 1st Cir.1983), writs denied, 440 So.2d 730 and 441 So.2d 747 (La.1983). The crime of second degree murder, as applicable in the instant case, is defined in La.R.S. 14:30.1, as follows:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
...
The testimony of London and the other State witnesses shows that on July 1, 1983, at approximately 6:00 p.m., the defendant, Wash Mullins, Jr., shot at Walker while she was sitting in the front right seat of London's automobile while the automobile was stopped for a red light at the intersection of 72nd Street and Scenic Highway in East Baton Rouge Parish, Louisiana. Thereafter, Mullins walked around London's car and shot Walker several more times as she was lying on the road surface in the intersection. The parties stipulated if Dr. Deborah Cavalier were called to testify, she would say she performed an autopsy on Esther Mae Walker, a 29 year old black female, on July 2, 1983, and the cause of Walker's death was hypovolemic shock secondary to gunshot wounds of the chest and upper back. In addition, Mullins gave the following testimony at the trial:
Q. Well, tell me what you did.
A. Well, I shot through the glass.
Q. How many times?
A. One.
Q. Were you still in your car then or out of your car?
A. I had got out.
Q. Okay, and then what did you do after you shot once through the glass?
A. I went around on the driver's side.
Q. Why did you go around to the driver's side; because that's where they were?
A. Yeah.
Q. Okay, and when you walked around on the driver's side, you had to walk around Jessie London's car. Is that right?
A. Right.
Q. All right, when you got around the car, where were they?

*462 A. Jessie London was standing back. She was  had fell on the ground.
Q. Okay, what happened then?
A. That's when I shot her.
Q. How many times?
A. They say four but I don't really know.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(1). Specific criminal intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances of the transaction. La. R.S. 15:445. The evidence showing Mullins shot at Walker through the window of the car in which she was riding, walked around the London vehicle and subsequently shot Walker several times while she was lying on the road surface is sufficient to prove he had the specific intent to kill or to inflict great bodily harm. State v. Noble, 425 So.2d 734 (La.1983).
The defendant contends his testimony demonstrates he was acting in "sudden passion" or "heat of blood" caused by provocation and he can only be guilty of manslaughter. Manslaughter, for purposes of this argument, is defined in La.R.S. 14:31 as follows:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
"Heat of blood" and "sudden passion" are not elements of the offense of manslaughter but are mitigating circumstances which may reduce the grade of a homicide. State v. Tompkins, 403 So.2d 644 (La.1981).
The defendant testified that on the third Sunday of April of 1983, Walker told him she was going to the "country" to see her mother with her sister. After going to church, the defendant went "across the river" to a nightclub. At the club he saw Walker and London together. The defendant returned home, but Walker did not come home until 1:00 the next morning. The following day London was at the defendant's home talking with Walker when the defendant came home for lunch. When the defendant came home from work that night, he had an argument with Walker about London and Walker cursed him and said she would get even with him. The following Friday the defendant gave Walker $105 for groceries, $150 for rent and put $100 under his mattress. The next day he went fishing. When he returned home, Walker and her clothes were gone. Walker did not pay the rent nor buy groceries. The $100 under the mattress was gone. Defendant had also given Walker $2,000 to put in a savings account, and that money was gone also. In June of 1983, Walker called the defendant at his job. The defendant asked her about the money, and she said don't bother me about that. She also told him "I got you where I want you", go home and look at your dresser and you will see one of your pictures is gone. The defendant got all "confused" and could not sleep. He figured it was a "hoodoo". The next time he saw Walker was on July 1, 1983. He followed Walker and London because he wanted to talk to Walker about getting his money back. When the two vehicles were side by side at the red light, the defendant asked Walker about the money and she cursed him and said we are going to get more out of you. Defendant testified he had no intention to harm either London or Walker but only to scare them and that he was "out of my *463 mind; couldn't think." Defendant also testified "I just went berserk."
In contrast to the defendant's testimony, London testified that when Walker rolled her window down the defendant produced a pistol. Walker rolled the window back up. The defendant then got out of his car and shot through the window. London did not hear the defendant say anything to Walker about money and specifically testified Walker did not curse the defendant.
The jury's verdict indicates it accepted London's version of the events and rejected the defendant's conflicting testimony. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir. 1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. Korman, 439 So.2d at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as "thirteenth juror" in assessing what weight to give evidence in criminal casesthat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La. 1984). The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. Tompkins, 403 So.2d at 647. The evidence of record is sufficient to support the jury verdict. Cf. State v. Johnson, 426 So.2d 95 (La.1983).
This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In assignment of error 2, the defendant contended the district court committed error when it denied his motion for a mistrial due to inadmissible references to him having been in jail. Because this assignment of error was not briefed, it is considered abandoned. Uniform RulesCourt of Appeal, Rule 2-12.4.