504 So.2d 974 (1987)
STATE of Louisiana
v.
Mitchell SPEARS.
No. KA 86 0770.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Writ Denied June 5, 1987.
*975 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge, by Joe Lotwick, Asst. Dist. Atty., for plaintiff-appellee.
Sam D'Amico, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
After a jury trial, Mitchell Spears was found guilty of second degree murder, a violation of LSA-R.S. 14:30.1. He received the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal, the defendant urges two assignments of error.

FACTS
On Sunday, December 2, 1984, at approximately 10:00 p.m., the defendant, Mitchell Spears, shot and killed Calvin Cavalier in the Scotlandville area of Baton Rouge. This shooting incident occurred at the apartment of the victim's sister, Cynthia Cavalier. Earlier that evening, at approximately 7:00 p.m., the defendant had come to the apartment seeking Cynthia, his former girlfriend and the mother of his three-year-old son. Cynthia's cousin, Lionel Burks, who was temporarily living with her, answered the defendant's knock on the door. The defendant stated that he wanted to see Cynthia, but Burks informed him that she was not home. At that point, the defendant produced a .16 gauge single shot shotgun and forced his way into the apartment.
The defendant held Burks hostage for approximately three hours. Around 10:00 p.m., Cynthia arrived home with her two children, her brother, Calvin, and her new boyfriend, Lionel Thomas. When Cynthia, Thomas and the children reached the apartment, Burks answered the door while the defendant hid behind him with the shotgun. Burks stood in the doorway and prevented Thomas from entering the apartment. The defendant then reached around Burks, grabbed Cynthia, and pulled her inside the apartment. Thomas went downstairs and told Calvin what had just occurred. Calvin, who had been waiting in the car, then went upstairs, opened the door, and was immediately struck in the chest by a single shotgun blast.
After the shooting occurred, Thomas ran to a nearby sheriff's substation to summon help. Burks grabbed the two children and hid in a closet inside the apartment. The defendant fled with Cynthia and was apprehended a few hours later at his mother's home in Slaughter, Louisiana.
Emergency medical personnel arrived on the scene shortly after the shooting but were unable to revive the victim. When sheriff's deputies arrived at the scene, they found a .9 mm automatic pistol lying on the balcony beside the victim's body. They discovered that the emergency medical technicians had moved the victim's body only a few inches while they were treating him. At the trial, Burks, Cynthia, and Thomas all testified that the victim was unarmed when he was shot by the defendant. However, Detective Eberhardt of the East Baton Rouge Parish Sheriff's Department testified that, during the questioning of witnesses shortly after the shooting, he heard Burks say that the victim was armed with the pistol. Sgt. Fletcher of the East Baton Rouge Parish Sheriff's Department also testified that Thomas informed him shortly after the shooting that the victim was armed with the pistol.
At the trial, the defendant testified that Cynthia had invited him to move into her apartment. When he arrived Sunday evening, she wasn't there; so he waited with Burks. He testified that he did not threaten Burks or Cynthia with the shotgun, but that when the victim appeared in the doorway and reached for the pistol, he grabbed the shotgun which was leaning against the *976 wall and fired at the victim in self-defense. The defendant also stated that, after the shooting, he fled because he was afraid of being arrested by a certain sheriff's deputy who had threatened him in the past and that Cynthia went with him willingly.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant timely submitted four special instructions to the trial court to be given to the jury. The trial court refused to give these suggested jury instructions. In this assignment of error, the defendant contends that the trial court erred in refusing to give special jury instructions numbers two and three.
La.C.Cr.P. art. 807 provides, in pertinent part, that:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
In the instant case, the trial court's general charge to the jury contained the following language on the issue of self-defense:
If you find that the defendant has raised the defense that his conduct was justified, the state must prove the defendant's conduct was not justified.
Remember, the state bears the burden of proving the guilt of the defendant beyond a reasonable doubt.
A homicide is justifiable if committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
The danger need not have been real as long as the defendant reasonably believes that he was in actual danger.
* * * * * *
A person who is the aggressor or who brings on a difficulty cannot claim the right to self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
In determining whether the defendant was the aggressor, you must consider the nature of the confrontation and whether the victim's actions were a reasonable response.
Thus, if you find the defendant was the aggressor or that he brought on the difficulty, you must reject his claim of self-defense.
You must remember the defendant who raises the defense that he acted in self-defense does not have the burden of proof on that issue. The state must prove beyond a reasonable doubt that the homicide was not committed in self-defense.
An examination of the requested special instructions indicates that both of these instructions dealt with certain aspects of the theory of justification, or self-defense.[1] *977 Instruction number two basically states that a man suddenly assaulted does not have a duty to retreat, but may kill in self-defense if it is reasonably and apparently necessary to use deadly force to protect himself. This charge is phrased in terms which suggest that it should apply in all situations in which self-defense might arise. However, the requested instruction does not deal with situations in which the person who uses deadly force in self-defense was the initial aggressor. In such situations, the "aggressor doctrine" would apply, i.e., the aggressor would be required to retreat before he could use deadly force in self-defense, since it was his initial aggression which created the dangerous situation. LSA-R.S. 14:21.
In situations where the aggressor doctrine would apply, the defendant's requested special instruction number two would be wrong, because an aggressor would have to retreat before he could kill in self-defense. LSA-R.S. 14:21. There was testimony in the instant case which indicated that the defendant, by forcibly entering the apartment at gunpoint, became the aggressor. Therefore, requested special instruction number two would not be wholly correct and would require explanation before it could be properly used in this case. La. C.Cr.P. art. 807. We conclude that the trial court properly refused to give requested special jury instruction number two.
Requested special jury instruction number three concerns a defendant's "subjective" belief that he is in immediate danger. According to this instruction, a defendant who acted in self-defense would not be criminally liable if he was wrong in his belief that he was in danger, as long as this belief in imminent great bodily harm or death was reasonable. In his brief, the defendant admits that the trial court's general charge "touched upon" this issue but "did not address the situation where a defendant acted in self-defense in error albeit in good faith." To the contrary, we believe that this issue was fully addressed by the third paragraph of the trial court's general jury charge. Therefore, the trial court properly refused to give the defendant's requested special jury instruction number three. La.C.Cr.P. art. 807. See also State v. Crumholt, 357 So.2d 526 (La.1978).

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, the defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal and motion for new trial.
The defendant's motion for post-verdict judgment of acquittal contends that the evidence was insufficient to support his conviction of second-degree murder. The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Garcia, 483 So.2d 953 (La. 1986).
In pertinent part, LSA-R.S. 14:30.1 defines second-degree murder as the killing of a human being "when the offender has a specific intent to kill or to inflict great bodily harm."
LSA-R.S. 14:10 defines specific intent as a "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981). Thus, it is necessary that a determination be made as to whether the circumstances presented support the jury's finding that the defendant had the specific intent to kill or to inflict great bodily harm.
In this case, the victim's death was proved. The fact that the defendant aimed and fired a shotgun at close range indicates that the defendant clearly had the specific *978 intent to kill or to inflict great bodily harm upon the victim. Several people witnessed the shooting, and the defendant admitted at trial that he shot the victim. Therefore, the only remaining issue in a review of the sufficiency of the evidence is whether or not the defendant acted in self-defense.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Garcia, 483 So.2d at 956. Thus, the issue in this case is whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. See State v. Garcia, 483 So.2d at 956.
The guilty verdict returned in this case indicates that the jury accepted the testimony of the prosecution witnesses while rejecting the testimony of the defense witnesses. The trier of fact remains free to accept or reject, in whole or in part, the testimony of any witness. State v. Mullins, 464 So.2d 459 (La.App. 1st Cir.1985).
Therefore, in essence, the defendant is requesting this court to reweigh the credibility of the witnesses when reviewing the sufficiency of the evidence. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. Mullins, 464 So.2d at 463. A determination of the weight of the evidence is a question of fact. State v. Mullins, 464 So.2d at 463. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. art. V, § 10(B).
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded that the state carried its burden of proof. See State v. Garcia, 483 So.2d at 956.
The defendant also contends that the trial court erred in denying his motion for new trial. Specifically, the defendant argues that he was entitled to a new trial pursuant to La.C.Cr.P. art. 851(1), (3), and (5).
La.C.Cr.P. art. 851 provides, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
* * * * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The defendant's contention that the jury verdict was contrary to the law and the evidence was previously addressed. We concluded that the evidence was sufficient to sustain the defendant's conviction of second-degree murder.
Next, the defendant argues that the trial court should have granted his motion for new trial based on the newly discovered evidence which he produced at the hearing on the motion for new trial. It is the defendant's contention that Cynthia committed perjury when she testified that she had ended her relationship with the defendant approximately two years before the shooting incident occurred. At the trial, in an attempt to establish that their relationship had not ended two years earlier, the defendant produced a note addressed to him and allegedly written in October, 1984, by Cynthia. On cross-examination, Cynthia *979 denied she had written this note. At the hearing on the motion for new trial, the defendant introduced this note, as well as several other notes and letters which were allegedly written to him by Cynthia. Four of these notes and letters were signed "Cynthia". The defendant also introduced evidence that a handwriting analysis expert, Robert Foley, had examined these notes and letters and concluded that they were all written by the same person. The defendant argued that this evidence proves that Cynthia committed perjury by testifying that she had not written the note on which she was questioned at trial and that she committed perjury by testifying that her relationship with the defendant had ended two years before the shooting incident.
In a motion for new trial based upon the discovery of new and material evidence, the burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that, if the evidence had been introduced at trial, the new evidence probably would have caused the trier of fact to reach a different verdict. State v. Clayton, 427 So.2d 827 (La.1983) (on rehearing). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir. 1983). Furthermore, the trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Buchanan, 439 So.2d at 583.
In this case, the defendant has failed to show that this new evidence could not have been discovered before trial by the exercise of due diligence. In fact, it is apparent that the defendant possessed at least one of these notes before trial, since he produced this note at the trial and cross-examined Cynthia about it. Even if the defendant was surprised when Cynthia denied that she had written this note, the defendant could have requested a recess in order to produce expert testimony that the handwriting on the note was Cynthia's. We find that the trial court did not abuse its discretion in denying the defendant's motion for new trial on this basis.
Finally, the defendant argues that the ends of justice would be served by granting him a new trial. La.C.Cr.P. art. 851(5). Where the defendant's motion for a new trial is based on La.C.Cr.P. art. 851(5), the granting or denial of a new trial is not subject to review by an appellate court. State v. Savoie, 448 So.2d 129 (La. App. 1st Cir.1984), writ denied, 449 So.2d 1345 (La.1984).

DISPOSITION
Accordingly, we find that both assignments of error are without merit. For the foregoing reasons, we affirm the conviction and the sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant's requested special jury instruction number two provides:

If a man is suddenly assaulted by another who intends to kill him or to inflict on him great bodily harm, he is not bound to retreat at all, but he may stand his ground and kill his assailant if there is reasonable and apparent necessity to save his life or protect his person.
In other words if the defendant, Mitchell Spears, was assaulted by Calvin Cavalier, and Cavalier intended to inflict bodily harm upon Spears, Spears was not bound to retreat at all, but Spears could have stood his ground and shot Cavalier if it was reasonable and apparent that this was necessary for Spears to protect his person.
The defendant's requested special jury instruction number 3, provides:
Self defense does not depend entirely upon the fact that the danger apprehended by the accused was real or imminent and where a man has been assaulted, although he may be mistaken that his life was in danger, or that he was in danger of receiving great bodily harm, he will not be responsible for his action, if he acts upon an honest belief, induced by reasonable evidence.
An overt act or hostile demonstration need not amount to a felonious assault; the test being not what the person assaulting intended, but what the act he did caused defendant to believe was his intention.
The law does not require of the defendant the same coolness and judgment in estimating his danger that can be exercised by the jury in reviewing the circumstances of the encounter.