515 So.2d 601 (1987)
STATE of Louisiana
v.
Roland CONVERSE.
No. KA 86 1472.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Timothy Barbier, Napoleonville, for defendant appellant.
Donald Candell, Gonzales, for plaintiff appellee.
Before WATKINS, CARTER and CHIASSON,[*] JJ.
REMY CHIASSON, Retired Judge.
Roland Converse was indicted by the Assumption Parish grand jury for manslaughter, in violation of La.R.S. 14:31.[1] A jury convicted him as charged, and the trial court imposed the maximum sentence of twenty-one years at hard labor. He appealed, urging as his only assignment of error that the evidence is not sufficient to support the verdict.
Defendant was charged with the death of Cynthia Sanders, a woman with whom he had lived for several years in a relationship marked by violence. The victim died of coronary arrest caused by asphyxiation.
The victim died May 17, 1984, after a fight with defendant. The couple argued in front of witnesses and defendant chased the victim when she attempted to flee, repeatedly hitting her with his fist. Defendant and the victim then retired to the bedroom they shared in the small duplex apartment, *602 and sounds of a struggle were heard in the adjoining apartment.
Shortly thereafter, defendant knocked on the common wall and asked Don Kennedy, his neighbor, for assistance. He asked Erica Sanders, the victim's cousin who had been staying with them, to call an ambulance. At that time, the victim had no pulse; and attempts to revive her by Don Kennedy and Deborah, his wife, were unsuccessful. The victim was taken by ambulance to a local hospital, where she was pronounced dead.
Defendant was arrested later that evening. He gave a statement in which he claimed the victim had fainted and he had simply picked her up from the floor and placed her on the bed before calling for help. Defendant also testified at trial, maintaining that the victim died of natural causes.

SUFFICIENCY OF THE EVIDENCE
In his only assignment of error, defendant argues that the verdict of manslaughter is contrary to the law and evidence and that the evidence is not sufficient. He submits that the trier of fact erred by giving credence to the testimony of Deborah Kennedy because her testimony was contradicted by other witnesses and that the state did not eliminate the possibility that the victim died as the result of a cerebral aneurysm.
Initially, we note that the proper procedural vehicle for raising the sufficiency of the evidence is by a motion for a post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La. App. 1st Cir.1983). No such motion was filed herein. However, a reviewing court, upon assignment of error and briefing, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in article 821. The standard set forth in that article is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.
The state presented the testimony of the investigating officers, who arrived before the ambulance. Deputy Charles Mabile testified that he immediately suspected the victim had been strangled because of the presence of what he believed to be a quantity of urine on the bedcovers.[2] Thereafter, the state presented the testimony of Jerry Miller, a forensic scientist for the Louisiana State Police crime laboratory. Mr. Miller testified that he had examined the items of clothing that had been removed from the victim's body and detected urine stains on the clothing. Miller further testified that the clothing smelled strongly of urine, suggesting that a copious quantity had permeated the fabric.
Dr. Nelson Cox, the coroner of Assumption Parish, testified regarding the results of the autopsy he performed on the victim. He noted various bruises and abrasions on the victim's neck and petechial bleeding in both eyes, which, he further testified, is indicative of asphyxiation due to strangulation. Dr. Cox also testified that he had palpated and X-rayed the victim's neck but had not discovered a fracture and that his other findings were essentially normal. Defendant then cross-examined Dr. Cox extensively about the long lasting effect of a head injury suffered by the victim nine months before her death and about the victim's history of fainting. Dr. Cox indicated that the victim's medical history did not reflect that she suffered from a long term injury or that her death could have been due to the head injuries she sustained at that time.
Following Dr. Cox's testimony, the state presented evidence by Dr. James Freeman, a pathologist who examined the victim's body after it was exhumed almost two years after her death. Dr. Freeman noted *603 that the victim's corpse had been well preserved. He testified that he dissected the victim's brain and throat and was able to definitely eliminate the possibility that the victim died from a hemorrhage or any type of injury to the brain. He testified, moreover, that dissection of the victim's throat revealed that the victim's larynx was cracked and that the strap muscles of her neck showed signs of a hemorrhage that occurred immediately before her death. Dr. Freeman opined that the victim died of asphyxiation caused by strangulation.
After the expert testimony, the state presented the testimony of Don Kennedy, Deborah Kennedy and Erica Sanders, all of whom had witnessed the earlier altercation between defendant and the victim and were present in the building when the victim died. Of these witnesses, only Deborah Kennedy testified that she heard sounds from the apartment next door that indicated the victim was choking. Don Kennedy noted, however, that he did not listen to the sounds from next door and that he was "kind of high" at the time. Deborah Kennedy testified that she clearly heard sounds from the victim's apartment that included something falling down in the house and a rapid rocking of the bed followed by the victim's choking gasps. Finally, Ms. Kennedy testified that she stood by the flimsy wall listening to the fight next door and could clearly hear; however, her husband was several feet away, sitting close to the television set, which he played loudly because he did not want to hear the fight.
The state also presented the testimony of Erica Sanders, who was on the sofa in the living room of the victim's apartment when the victim died. Ms. Sanders testified that no one else entered the bedroom and that she heard knocking on the wall before defendant came out and asked her to call an ambulance. She further testified that, although she did not hear an argument or the other sounds Ms. Kennedy heard, she was also sitting in front of the television set that was playing loudly enough to muffle the sounds.
Defendant then attempted to establish a history of blackouts by the victim by presenting testimony from a witness who claimed to have seen her unconscious outside of a bar some five or six years before. Defendant also took the stand and testified that the victim had lost consciousness once in his company, also at a lounge. Defendant admitted that he and the victim had struggled earlier in the afternoon but claimed the victim was not upset with him when he asked her to come into the bedroom for a private discussion. Thereafter, he claimed, she simply passed out. He testified that he placed the victim on the bed and knocked on the wall to ask Don Kennedy for assistance.
On cross-examination, defendant specifically denied that he had ever beaten or choked the victim. In rebuttal, the state presented testimony by Hazel Queen, a friend of the deceased, who testified that the victim had come to her house on January 1, 1984 to use her bathroom facilities; and when defendant followed her a few minutes later, the victim apparently fainted when she heard his voice. She further testified that she saw defendant grab the victim by the hair and pound her head on the floor before grabbing her by the crotch of her pants and dragging her from the bathroom. Thereafter, she saw him slap and kick the victim repeatedly. After he grabbed the victim by the neck and attempted to choke her, Ms. Queen testified that her husband and brother-in-law pried his fingers from the victim's neck. He then continued to slap and kick her and ripped the victim's clothes from her body. Ms. Queen testified that she was prevented from calling the police by her husband but that her brother-in-law eventually forced defendant to leave.
The state also produced the testimony of Mary Jane Wiggens, a former girlfriend of defendant, who testified that their relationship was very violent and that defendant had beaten and choked her several times. The witness also testified that defendant once hit her in the head with a gun and, despite the fact that she was bleeding profusely, continued to beat her. Ms. Wiggens testified she was required to seek emergency medical treatment, including *604 several stitches in her scalp, after that incident.
In the case before us, defendant asks that we evaluate the credibility of the witnesses, particularly Deborah Kennedy, and overturn the jury on its factual determination of guilt. That evaluation is not the function of an appellate court. La. Const. art. V § 5(C); State v. Richardson, 425 So.2d 1228 (La.1983). Where there is conflicting testimony as to factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency; and determinations of credibility are within the sound discretion of the trier of fact. State v. Spears, 504 So.2d 974 (La.App. 1st Cir. 1987), writ denied, 507 So.2d 225 (La.1987); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La. 1983). The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Spears, supra. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. art. V § 10(B). Therefore, we reject defendant's assertion that the testimony of Ms. Kennedy should be dismissed as not credible.
Defendant argues that the circumstantial evidence presented by the state failed to eliminate the possibility that the victim fractured her larynx when she fainted. "The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict it must exclude every reasonable hypothesis of innocence. La.R. S. 15:438. This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. (citations omitted.) The statutory rule provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus, although the circumstantial evidence rule ... may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observation of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Nealy, 450 So.2d 634, 637 (La.1984).
Despite defendant's assertion that the testimony of Dr. Cox did not eliminate the possibility that the victim died of a brain hemorrhage, the testimony of Dr. Freeman clearly established that a dissection of the victim's brain eliminated any possibility whatsoever that the victim died from an aneurysm. Thus, the only remaining hypothesis of innocence is that the victim fainted and cracked her larynx when she fell.
Although Dr. Freeman admitted that the possibility of a cracked larynx during a faint could not be eliminated, he opined that it was not at all likely because fainting victims do not tend to fall forward. Further, we note that the bruises and abrasions on the victim's neck and strap muscles could not be explained by such a fall, nor the urine stains (which defendant claimed were water from ice bags placed on the victim's feet), or the choking sounds overheard by Ms. Kennedy.
"When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. ... [T]he court does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion. Rather the reviewing court evaluates the evidence in the light *605 most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not `have found proof of guilt beyond a reasonable doubt.'" State v. Captville, 448 So.2d 676, 680 (La.1984).
Defendant's testimony that the victim fainted and mortally wounded herself during the fall was clearly discredited by the medical testimony. The only other hypothesis of innocence, that the victim died from a brain hemorrhage, was rebutted by the expert testimony of Dr. Freeman and was also rejected by the jury. We find that the evidence of guilt presented by the state is sufficient to support the verdict. This assignment of error has no merit.
For the foregoing reasons the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the death of Judge John S. Covington.
[1] The indictment returned by the grand jury does not contain a statutory citation, although it does set forth that defendant is charged with manslaughter. Omission of the citation is not grounds for reversal of the conviction if it did not mislead the defendant to his prejudice. La. C.Cr.P. art. 464. Defendant does not complain of this error; nor does the record indicate that he was misled.
[2] Out of the presence of the jury, Deputy Mabile advised the court that evidence the victim voided her bladder at death was an important indication that she died by manual strangulation. However, the court found the correlation between strangulation and the evidence of urination by the victim was not within the realm of Deputy Mabile's expertise; and he was not permitted to inform the jury of the basis for his conclusion that she was strangled.