STATE OF LOUISIANA
v.
KENNETH C. McGEORGE.
No. 2007 KA 0997.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Not Designated for Publication
Before: GAIDRY, McDONALD and McCLENDON, JJ.
MCDONALD, J.
The defendant, Kenneth C. McGeorge, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. He pled not guilty. Following a jury trial, the defendant was found guilty as charged. He was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating three assignments of error. We affirm the conviction and sentence.

FACTS
The defendant had an ongoing problem with drug use. On several occasions, the defendant had purchased drugs from Darnell Certain, who was known to sell drugs. On the evening of June 9, 2002, the defendant picked up Darnell Certain from his home in Abita Subdivision in Abita Springs, St. Tammany Parish. The defendant was driving his wife's car, a Chrysler New Yorker LHS. Darnell was sitting in the front passenger seat. After driving around, the defendant drove down Lowe Davis Road toward La. Highway 59. At a stop sign at La. Highway 59, the defendant pulled a gun and shot Darnell in the left side of his head.[1] It is not clear if Darnell died immediately from his head wound.[2]
The defendant drove about one-half mile to a farm off of John T. Prats Road, a newly built roadway at that time. The defendant removed Darnell from his car and dragged him into the woods. He left Darnell there and drove back toward Covington. On La. Highway 21, he threw the gun out of the window. The defendant then drove to a friend's house. His friend was not home, but the friend's roommate, Kip, was there. The defendant asked Kip for some towels to wipe off his seats. The defendant began hosing out the interior of his car. Someone in the area called the police and reported the defendant as a suspicious subject. Deputy Dustin Day with the St. Tammany Parish Sheriff's Office was dispatched to the scene about 8:30 p.m.
Deputy Day testified at trial. According to his testimony, upon observing the defendant spraying the interior of his car with a water hose at night, Deputy Day asked the defendant to step away from the car. Deputy Day looked inside the car and asked the defendant what happened. The defendant said that he had been on a fishing trip, had spilled some food, and was trying to clean it out. Deputy Day observed blood splatter on the passenger side door panel and asked the defendant what it was. The defendant said that it was ketchup from a ketchup pack that had burst. After further conversation, the defendant said that the splatter was jelly instead of ketchup. Shortly thereafter, the defendant's wife arrived at the scene. The defendant, after briefly conversing with his wife, approached Deputy Day and informed him that he wanted to change his story. The defendant stated that he did not spill food in his car. He stated he had been in the Abita Nursery Subdivision trying to buy drugs, and his drug dealer got in the car and tried to rob him at gunpoint. The defendant stated he grabbed a hammer and hit the man in the head with the hammer a couple of times, then opened the passenger side door and pushed the man out of the car onto Nursery Street and drove off. Deputy Day turned the scene over to his supervisor and drove to the Nursery Street area to see if he could find the man who allegedly was struck in the head with a hammer. Deputy Day did not find the man or any evidence, such as blood, that would corroborate the defendant's story.
The following day the defendant was brought in for questioning by Sergeant James Davis and Detective Sergeant Jerry Hall, both with the St. Tammany Parish Sheriffs Office. The defendant was not under arrest at this time. The interview was recorded, and the audiotape was played for the jury. In the interview, the defendant told essentially the same fabricated story that he had told Deputy Day, except for several details. He claimed that he was looking for drugs and picked up a man he did not know in the Abita Subdivision. After the defendant had been driving for a short while, the man pulled out a pistol and demanded the defendant's money. The defendant grabbed a homemade chipping hammer from behind the seat and struck the man in the face a couple of times with the hammer. The man began bleeding profusely. The defendant drove to Nursery Street and pushed the man out of the car. Several days after the interview, Darnell's body was found and the defendant was arrested.
Dr. Michael DeFatta, a pathologist who performed the autopsy on Darnell, testified at trial. According to Dr. DeFatta, the body was in an advanced stage of decomposition. The head area was basically a skeleton because of a significant amount of tissue loss to that area. There was mummification of the upper portion of the body and certain portions of the lower extremities. Dr. DeFatta could not be certain whether Darnell had sustained trauma to his face since there was no soft tissue to examine. However there were no fractures of the bones in the face. Darnell had sustained a gunshot wound to the left temple, and the bullet was recovered in the bottom portion of his skull. The results of the toxicology report were negative. No money was found on Darnell's body.[3] According to Darnell's fiancée, Sherome Green, when Darnell left with the defendant on the day he was killed, Darnell had about $1,000 on him. Detective Sergeant Hall testified on cross-examination that Darnell's rap sheet indicated he had convictions for aggravated assault with a dangerous weapon, burglary, attempted burglary, and a drug charge. On redirect examination, the prosecutor had Detective Sergeant Hall identify the bill of information for Darnell's aggravated assault charge, which indicated that the charge was nol-prossed.[4]
The defendant testified at trial. He had two prior convictions of simple possession of marijuana and simple battery. He had been taking drugs, both legal and illegal, for many years. He admitted that he shot Darnell, but claimed the shooting was in self-defense. He testified that he had bought drugs from Darnell on prior occasions six or seven times. On the night of the killing, according to the defendant, he picked up Darnell at his house because he wanted crack cocaine. Darnell did not have the drugs on him, so the defendant drove Darnell to two houses. Darnell went inside the houses, while the defendant waited outside in his car. After leaving the second house, Darnell said they needed to "go to Abita." The defendant drove toward Abita Springs on Lowe Davis Road. When they came to the stop sign at La. Highway 59, Darnell asked for the money. The defendant gave him $90 (a $50 bill and two $20 dollar bills). Darnell then demanded the rest of the money, and told the defendant, "If you don't give me the rest of the money, I'll pop a cap in your ass." The defendant said that was all he wanted to spend. Darnell responded, "Empty the rest of your pockets out before I kill your f___ing ass." The defendant told him to take the money and get out of the car. The defendant said, "If you don't give me the rest of your money, I'm going to kill your f___ing ass." Darnell then reached around the side of him, as if reaching for a weapon. The defendant, fearing that Darnell was going to kill him, reached between the seats, pulled out a .22 revolver, and shot Darnell. The defendant then drove to a nearby farm where he used to hunt, and he dragged Darnell's body into the woods. He drove back toward Covington and, on La. Highway 21, he threw the gun out of the window. The defendant never saw Darnell with a gun, nor did he ever find a gun on Darnell. However, he believed that Darnell had a gun.
The defendant further testified that he lied about hitting Darnell with a hammer because it "sounded a whole lot better to say I hit somebody in the head with a hammer." He also lied about where he "dumped the body." When the defendant was asked if the statement he gave to Detective Sergeant Hall and Detective Davis was replete with lies, he responded, "From start to finish."
A $20 bill, along with some other unidentified money, was found in the defendant's car. Deputy Day testified that he patted down the defendant, but could not remember if he had any money on him. However, if the defendant would have had $1,000 on him or if there was $1,000 inside the car, Deputy Day would have remembered that.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the evidence was insufficient to support a conviction. Specifically, the defendant contends that the State did not prove beyond a reasonable doubt that he did not kill Darnell in self-defense.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statutes 14:30.1 provides in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of . . . armed robbery . . . even though he has no intent to kill or to inflict great bodily harm.
Louisiana Revised Statutes 14:20 provides, in pertinent part:
A. A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
Louisiana Revised Statutes 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan, 94-2503, p. 13 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982). Thus, it is necessary that a determination be made as to whether the circumstances presented support the jury's finding that the defendant had the specific intent to kill or to inflict great bodily harm. State v. Spears, 504 So.2d 974, 977 (La. App. 1st Cir.), writ denied, 507 So.2d 225 (La. 1987).
In the instant matter, the victim's death was proved. The fact that the defendant shot the victim in the head with a pistol at close range indicates specific intent to kill or inflict great bodily harm. See La. R.S. 14:30.1(A)(1); State v. Ducre, 596 So.2d 1372, 1382 (La. App. 1st Cir.), writ denied, 600 So.2d 637 (La. 1992). Therefore, the only remaining issue in a review of the sufficiency of the evidence is whether or not the defendant acted in self-defense.
When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. Spears, 504 So.2d at 978.
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984). In finding the defendant guilty of second degree murder, it is clear that the jury did not believe the defendant's testimony regarding killing Darnell in self-defense because Darnell attempted to rob him.
The jurors apparently concluded that the defendant's version of the events immediately preceding the fatal shot was a fabrication designed to deflect blame from him. The conclusion by the jurors that the defendant did not testify truthfully could reasonably support an inference that the "truth"if told by him as the only survivor  would have been unfavorable to his self-defense theory. See Captville, 448 So.2d at 680.
The defendant testified that Darnell demanded money and reached around his side as if he were reaching for a gun. However, no gun was found by the defendant, and the defendant admitted in his testimony that he never saw Darnell with a gun. Further, the defendant admitted in his testimony that he had bought drugs from Darnell several times before, had driven around with him, and had never argued with him or had any problems with him. In rejecting a claim of self-defense, the jury rejected the defendant's claim of provocation by Darnell, and obviously concluded that the force used by the defendant against Darnell was unreasonable and unjustifiable.[5]
Moreover, the defendant made no attempt to contact the police after shooting Darnell. Instead, the defendant engaged in an extensive cover-up of any incriminating evidence connecting him to the shooting. In an attempt to hide the body after shooting Darnell, the defendant drove to a remote area in Abita Springs, dragged Darnell over ninety feet through the woods, and left him in the underbrush. The defendant then drove to La. Highway 21 and threw the gun out of the window.
The defendant drove to a friend's house and attempted to hose off the blood on the interior of his car. When Deputy Day approached the defendant and questioned him about his actions, the defendant said that he was on a fishing trip and had spilled some food. He said the blood spatter in his car was ketchup. He later said it was not ketchup, but jelly. After speaking to his wife, the defendant admitted to Deputy Day that he was attempting to purchase drugs. However, the defendant misrepresented almost every other pertinent fact. He lied about where he picked up Darnell. He falsely maintained that Darnell pulled a gun on him, and that he hit Darnell in the head with a chipping hammer. He also falsely maintained that he pushed Darnell out of his car on Nursery Street and drove off.
When he was brought in for questioning prior to being arrested, the defendant had the opportunity to tell the truth, but continued to lie. He maintained that Darnell tried to rob him with a nickel-plated gun, and that he grabbed a hammer off the floorboard and hit Darnell in the face with it two or three times. He then pushed Darnell out of his car on Nursery Street.
A finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind," as in the case of flight following an offense or the case of material misrepresentation of facts by the defendant following an offense. Lying has been recognized as indicative of an awareness of wrongdoing. Captville, 448 So.2d at 680 n.4. The facts in the instant matter established acts of both flight and material misrepresentation by the defendant.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Taylor, 97-2261, p. 5 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).
After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant did not kill his victim in self-defense and, as such, was guilty of second degree murder.[6]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues that the trial court erred in denying his motion to reopen the motion to suppress evidence at trial. Specifically, the defendant contends that items taken from his car by the police were illegally seized because the search of the car was not made incident to an arrest, and Deputy Day did not have probable cause to search the car.
Defense counsel filed motions to suppress evidence, identification, and confession or inculpatory statements. Prior to trial at the hearing on these motions, defense counsel sought to have a hearing only on the motion to suppress the statement. He informed the trial court that the motion to suppress identification was not applicable to the case. Regarding the motion to suppress evidence, he stated, "The evidence, I'm not concerned about that." Following the hearing on the motion to suppress the statement, the trial court asked defense counsel, "Just so the record is clear, the Motion to Suppress the evidence was withdrawn?" Defense counsel replied, "Yes, sir."
At trial, Sergeant Susan Downey, a crime scene technician with the St. Tammany Parish Sheriffs Office, testified that she processed the car the defendant was driving on the same day (June 9, 2002) the defendant was found by Deputy Day hosing out the interior of the car. She took several pictures of the car and of items that were found in the car, including a towel, a polo-type shirt, a hammer, a notebook, sandals, a $20 bill, cigarettes, and a bottle of ArmorAll. These pictures were introduced into evidence.
At the conclusion of Sergeant Downey's testimony, defense counsel moved to reopen the motion to suppress the evidence seized in the case because he had not seen some of the pictures just introduced into evidence. Also, defense counsel felt the evidence from the car was illegally seized because the defendant had not been placed under arrest at the time the car was searched, and there was no search warrant to search the car. The prosecutor responded that the defendant had been provided open-file discovery. The trial court denied the motion to reopen the motion to suppress evidence, finding that the original motion to suppress evidence had been withdrawn, and that the defendant had been provided with open-file discovery by the State.
Whether or not to permit a second suppression hearing or a reopened suppression hearing is a matter within the discretion of the trial court. State v. Medine, 623 So.2d 110, 112 (La. App. 1st Cir. 1993). The defendant had open-file discovery and had access to the pictures. Furthermore, defense counsel's motion to suppress, which was filed almost three years prior to trial, addressed the very same issues raised during the motion to reopen the motion to suppress at trial.[7] Defense counsel had the opportunity to argue these issues before the trial court prior to trial, but chose to withdraw his motion to suppress the evidence. We further note that, despite the defendant's argument in his brief that Deputy Day did not have probable cause to search the car, Deputy Day clearly had probable cause to believe that a crime had been committed when the defendant told him that he had hit someone in the head with a hammer and pushed him out of the car. See La. C.Cr.P. art. 213(3). Since there was probable cause to search the car (which was also the crime scene), no search warrant was necessary under the automobile exception. See Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam). Accordingly, we find no abuse of discretion by the trial court in denying the motion.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, the defendant argues that the trial court erred in denying his two motions for mistrial. The first motion was made when the prosecutor, according to the defendant, made an improper comment in front of the jury regarding defense counsel's decision to waive the hearing on the motion to suppress evidence. The second motion was made when, according to the defendant, a witness for the prosecution commented on the defendant's post-arrest silence.
Further, we note initially that the categories of impermissible remarks or comments under La. C.Cr.P. art. 770 are inapplicable to the instant matter. A mistrial under the provisions of La. C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness or of the prosecutor, make it impossible for the defendant to obtain a fair trial. See State v. Miles, 98-2396, p. 4 (La. App. 1st Cir. 6/25/99), 739 So.2d 901, 904, writ denied, 99-2249 (La. 1/28/00), 753 So.2d 231.
Louisiana Code of Criminal Procedure article 775 provides that a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. However, a mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal without abuse of that discretion. State v. Berry, 95-1610, p. 7 (La. App. 1st Cir. 11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La. 10/10/97), 703 So.2d 603.
In the first instance, defense counsel asked Sergeant Downey a series of questions on cross-examination about whether a warrant was obtained to search the car or whether the defendant was arrested at the time the car was searched. The prosecutor objected, stating, "Judge, at this time I'm going to object to this line of questioning. I think the Motion to Suppress Evidence is waived." Defense counsel moved for a mistrial because the comment made by the prosecutor in the presence of the jury about waiving the motion to suppress was "completely inappropriate" and the defendant was "prejudiced by it." Defense counsel did not request an admonition.
The trial court denied the motion, finding that the comment was not so prejudicial that a mistrial would be appropriate. We agree. We do not see how the jury could have gleaned any information that would be particularly pertinent to the trial or damaging to the defendant's case by the prosecutor's vague reference to a motion to suppress evidence waiver. While the prosecutor's comment may have been inappropriate, the defendant did not suffer such substantial prejudice that he was deprived of any reasonable expectation of a fair trial. The court did not abuse its discretion in denying the defendant's motion for a mistrial.
In the second instance, Detective Sergeant Hall testified on direct examination that when he arrived at the defendant's worksite, the defendant asked him how he found the body on the road. Detective Sergeant Hall told the defendant to "slow down" and that, if he was going to talk, he would be given his rights again. Detective Sergeant Hall Mirandized him. Following this summary of events, the prosecutor asked, "After informing Mr. McGeorge once again of his rights, did he make any formal statements?" Detective Sergeant Hall briefly reiterated that he gave the defendant his rights and that they would talk about it. The defendant said, "No, no, I don't want to talk anymore."
Several questions and responses later, defense counsel moved for a mistrial on the grounds that the prosecutor elicited a response about the defendant's post-arrest silence when he asked Detective Sergeant Hall if the defendant gave a statement after being informed of his rights. Defense counsel did not request an admonition.
The trial court denied the motion, but cautioned the State that this bordered on inappropriate. The trial court noted that it sounded "pretty harmless" and that the prosecutor "was trying to clean up all the various documents he was trying to introduce through this witness."
Initially, we note that defense counsel did not lodge a contemporaneous objection to the prosecutor's question to Detective Sergeant Hall about whether the defendant made any formal statements. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C.E. art. 103(A)(1); La. C.Cr.P. art. 841(A). Accordingly, the issue is not properly before us.
The lack of any contemporaneous objection notwithstanding, we find that the single reference to post-arrest silence did not warrant a mistrial. In Doyle v. Ohio, 426 U.S. 610, 611, 96 S.Ct. 2240, 2241, 49 L.Ed.2d 91 (1976), the United States Supreme Court found that it was improper for the prosecutor to impeach the defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In other words, Doyle condemns only "the use for impeachment purposes of [the defendant's] silence at the time of arrest, and after receiving Miranda warnings...." State v. George, 95-0110, p. 9 (La. 10/16/95), 661 So.2d 975, 980.
The question to Detective Sergeant Hall was not made on cross-examination and was not used to impeach the defendant. The question was not designed to draw meaning from silence, but to simply establish whether or not defendant had made any other statement to the police following his initial conversation with them about how the body was found, and to further establish whether defendant provided a statement to the police as he had just days prior to his arrest. Several days prior to Detective Sergeant Hall going to the defendant's worksite to arrest him, the defendant had given a recorded formal statement to the police. The statement was played for the jury prior to the instant complained-of line of questioning of Detective Sergeant Hall. As the prosecutor noted in his response to defense counsel's motion for mistrial:
The State wanted a way to cut off that there was further conversation at that point. The jury was already aware that the defendant had made other statements and had made a formal statement, which was presented to the jury earlier this afternoon. This is just a way to explain that although he said a few things, he stopped and there was nothing else further discussed.
The defendant's post-arrest silence was not used against him within the meaning of Doyle. This case involved a single comment and the prosecutor made no further reference to it. The purpose of the State's line of questioning was to summarize how the investigation culminated in the formal arrest of the defendant with the routine incidents of custody, and was not designed to exploit the defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense. See George, 95-0110 at pp. 9-10, 661 So.2d at 979-80. While the prosecutor's question may have, as noted by the trial court, "border[ed] on inappropriate," the defendant did not suffer such substantial prejudice that he was deprived of any reasonable expectation of a fair trial. The court did not abuse its discretion in denying the defendant's motion for a mistrial.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The handgun the defendant used was a .22 revolver. The gun, a family heirloom, belonged to the defendant's wife, Mary. Mary kept the gun in a box in the closet. Without her knowledge, the defendant had removed it from the box and had begun carrying it around with him.
[2] The autopsy protocol on Darnell states that the cause of death was a gunshot wound to the head, and the manner of death was homicide.
[3] A property receipt of the items found on Darnell's body was generated. The items were "one projectile from the head . . . tennis shoes, white socks, denim shorts, yellow shorts, and a FUBU shirt . . . one yellow metal bracelet on the right wrist and a watch from left wrist."
[4] Following the jurors being excused, defense counsel informed the trial court that the document in his possession indicated that Darnell's charge of aggravated assault was notated with "PGAC," which is commonly known as pled guilty as charged. However, the document identified by Detective Sergeant Hall suggested that the aggravated assault charge was nol-prossed. Defense counsel requested that the jury be allowed to see his document which suggested that the defendant pled guilty to the aggravated assault charge. The trial court agreed that the jury should see all the documentation and allowed both Defendant's Exhibits 3 and 4 to be published to the jury.
[5] In closing arguments, the prosecutor suggested that the defendant's motive for killing Darnell could have been robbery. It is unclear whether the jury found that the defendant shot Darnell with the specific intent to kill or inflict great bodily harm under La. R.S. 14:30.1(A)(1) or that the defendant shot Darnell during an armed (or attempted armed) robbery even though he had no intent to kill or inflict great bodily harm under La. R.S. 14:30.1(A)(2)(a).
[6] In his brief, the defendant maintains that, while he killed Darnell in self-defense, the State also failed to show that he had specific intent to kill Darnell. This assertion is erroneous. A homicide committed in self-defense is a justifiable homicide, which requires the specific intent to kill or to inflict great bodily harm. Thus, if the defendant killed Darnell in self-defense, all of the elements of second degree murder would have been present, except that the murder would be excused because the defendant, in defending himself, would have been justified. See La. R.S. 14:20.
[7] The motion to suppress the evidence, filed June 23, 2003, stated in pertinent part:

[T]he evidence sought to be used against defendant has been unlawfully and illegally obtained, and that the defendant moves that this evidence be suppressed in any criminal proceedings against the defendant for the following reasons, to-wit:
1. That the evidence to be used against the defendant, whether physical or any form of statement or confession, was not seized or obtained incidental to a valid arrest and/or search; and,
2. That the evidence to be used against the defendant was seized or obtained as the result of unlawful search without a warrant and without probable cause.