STATE OF LOUISIANA
v.
ALVIN LANUS.
No. 2007 KA 0884.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
NOT DESIGNATED FOR PUBLICATION.
DOUG MOREAU, BRENDA O'NEAL, CLIFF WILKERSON, Attorneys for Appellee, State of Louisiana.
PRENTICE L. WHITE, Attorney for Defendant/Appellant, Alvin Lanus.
ALVIN LANUS, Appellant, Pro Se.
Before WHIPPLE, GUIDRY AND HUGHES, JJ.
WHIPPLE, J.
The defendant, Alvin Lanus, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1 (count 1); aggravated burglary, a violation of LSA-R.S. 14:60 (count 2); and second degree kidnapping, a violation of LSA-R.S. 14:44.1 (count 3). The defendant pled not guilty to the charges. The defendant waived his right to a jury trial and, following a bench trial, he was found guilty of the responsive offense of manslaughter (to count 1), a violation of LSA-R.S. 14:31. As to the remaining charges (counts 2 and 3), the trial court granted the defendant's motion for a "directed verdict" (motion for acquittal) and found the defendant not guilty of aggravated burglary and not guilty of second degree kidnapping. The defendant was sentenced to twenty years at hard labor. The defendant now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS
The defendant was separated from his wife, Jacqueline Lanus. Jerome Daniels, Jacqueline's boyfriend, began living with Jacqueline at her duplex on Kerrit Drive in Baton Rouge. Jacqueline's sons, Dejarvis Braxton and Demarcus Braxton, also lived with Jacqueline and Jerome. On November 3, 2001, between 3:30 a.m. and 4:00 a.m., the defendant broke a window at Jacqueline's residence. Jacqueline called 911. Jacqueline was still on the phone with 911 when the defendant, while armed with a .22 handgun, kicked in the back door of the residence. The defendant stated that he was going to kill Jacqueline and Jerome. When the defendant found Jerome in the living room, he shot Jerome in the chest, killing him. Jerome was unarmed. The defendant then told Jacqueline to grab her keys so that they could leave. They left in Jacqueline's car, and the defendant was arrested a short time later.
According to the defendant, who testified at trial, when he found Jerome in the living room, Jerome picked up a bedpost,[1] told the defendant he was going to kill him, and hit him with the bedpost. The defendant removed his gun from his pocket. According to the defendant, when Jerome hit him again with the bedpost, the defendant shot him. The defendant testified that he shot Jerome in self-defense. The State was unable to introduce testimony by Jacqueline, as she invoked her spousal witness privilege and refused to testify.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues that the trial court erred in allowing him to waive his right to trial by jury. Specifically, the defendant contends that the trial court's "cursory" discussion with him regarding his right to a jury trial did not establish that he knowingly and intelligently waived such right.
Although it remains the preferred method for the district court to advise a defendant of his right to trial by jury in open court before obtaining a waiver, such a practice is not statutorily required. See LSA-C.Cr.P. art. 780; State v. Pierre, 2002-2665, p. 1 (La. 3/28/03), 842 So. 2d 321, 322 (per curiam). Only a waiver which is knowingly and intelligently made is acceptable. State v. Kahey, 436 So. 2d 475, 486 (La. 1983). While the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy. State v. Brooks, XXXX-XXXX, p. 8 (La. App. 1st Cir. 3/28/02), 814 So. 2d 72, 78, writ denied, XXXX-XXXX (La. 11/22/02), 829 So. 2d 1037.
In the instant matter, at both the arraignment and prior to the start of trial, the trial court informed the defendant of his right to a trial by jury. The relevant pretrial colloquy is as follows:
Ms. O'Neal [prosecutor]: Your Honor, I understand that the defense is waiving a jury in this case, and I don't believe he has ever been asked about that on the record.
The Court: I did review the minutes, but I didn't review it for that particular requirement, Ms. O'Neal. I would re-review and out of an abundance of caution I will require the defendant to stand forward and indicate his preference for trial. Mr. Lanus.
Mr. Lanus: Yes, sir.
The Court: You have the right to have twelve persons sit on this case, all of whom  rather ten  ten must agree to find you guilty or to find you not guilty; or, you may elect to have me hear your case. Your lawyer has told me this morning that you would prefer rather than twelve minds to have one; is that your preference?
Mr. Lanus: Yes, sir.
Thus, despite the fact that the trial court was not required to advise the defendant of his right to trial by jury in open court before obtaining a waiver, the record clearly indicates the trial court properly advised the defendant, who was represented by counsel, of his right to be tried by a jury. The defendant stated unequivocally in open court and on the record that his preference was to proceed with a bench trial. Nothing in the record indicates that the defendant did not understand the right to a jury trial as explained to him by the trial court. We find the trial court correctly accepted the defendant's waiver as knowingly and intelligently made.[2] See Brooks, XXXX-XXXX at p. 8, 814 So. 2d at 78; see also State v. Bryant, XXXX-XXXX, pp. 5-8 (La. App. 4th Cir. 1/10/07), 950 So. 2d 37, 40-41.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues that he was denied his right to confront a particular witness who testified at trial. The defendant further argues that several instances of hearsay were used to allegedly prove his specific intent to kill.
The first issue raised by the defendant is that he was denied his constitutional right to confront Dejarvis Braxton[3] because he was permitted to return to Grambling University to take his final exams.[4] When Dejarvis finished testifying at trial, defense counsel requested the issuance of an instanter subpoena for Dejarvis, which the trial court granted. Later during the trial, Gloria Ballard, the 911 dispatcher, testified that Dejarvis told her that the defendant had kidnapped his mother. Defense counsel objected on the grounds of "a confrontation problem" because he was not able to cross-examine Dejarvis unless he called him back.[5] However, the trial court reminded defense counsel that Dejarvis was under an instanter subpoena and could be called back to testify. Later during the trial, but still during the prosecution's case-in-chief, defense counsel again requested that the instanter subpoena be issued for Dejarvis. The trial court ordered the subpoena to be processed. When the State rested, defense counsel called only two witnesses, Veronica Honore' and the defendant. Without recalling Dejarvis to testify, the defense rested. Accordingly, the defendant's alleged inability to confront Dejarvis was based not on any error committed by the trial court, but solely on defense counsel's decision not to recall Dejarvis. Thus, the defendant's assertion that he was denied the right to confront Dejarvis is baseless.
The next issue raised by the defendant is that the trial court erred in admitting inadmissible hearsay, namely, statements made by Demarcus Braxton regarding "how and why" the defendant and his wife were separated. The defendant does not quote any of the alleged statements made by Demarcus, but instead refers to page 318 of the record in a footnote. No contemporaneous objection was made at trial regarding any alleged hearsay. An irregularity or error cannot be complained of after the verdict unless it was objected to at the time of the occurrence. Accordingly, this argument is not properly preserved for appellate review. LSA-C.E. art. 103(A)(1); LSA-C.Cr.P. art. 841(A). See State v. Young, 99-1264, p. 9 (La. App. 1st Cir. 3/31/00), 764 So. 2d 998, 1005.
Moreover, our review of the testimony on page 318 of the record reveals that Demarcus did not testify about what anyone had said.[6] Instead, he simply answered questions about when and the length of time the defendant and Jacqueline were separated, not about how and why they were separated, as the defendant suggests. There are no hearsay statements to be found in the testimony of Demarcus on page 318. The defendant's assertion that the trial court admitted inadmissible hearsay is, therefore, baseless.
The next issue raised by the defendant is that the trial court erred in allowing Ballard to refer to the 911 transcript she prepared to refresh her memory, used pursuant to LSA-C.E. art. 803(5).[7] According to the defendant, Ballard did not specifically indicate her memory was insufficient. Instead, Ballard merely indicated she would prefer to use the 911 transcript to answer the State's questions.
The following is the relevant testimony of Ballard on direct examination regarding her ability to remember the 911 call:
Q. And would the paper be the best recordation of this communication?
A. Definitely.
Q. Are you able to recite from memory every event that happened or would the recordation that you made that morning be a better recordation of what had occurred?
A. I think the paper would definitely be the better recordation. I can recall pretty much most of the incidents, but not step by step.
The 911 transcript, which was made by Ballard when the matter was fresh in her memory and to reflect her knowledge of the matter correctly, is clearly a recorded recollection, which is an exception to hearsay. See LSA-C.E. art. 803(5). Pursuant to LSA-C.E. art. 612(B), any writing, recording, or object may be used by a witness in a criminal case to refresh her memory while testifying. Furthermore, the case law does not require a witness to make a direct statement that he has an inability to remember before it is permissible for the witness to use a writing to refresh his memory. State v. Hoffpauir, 99-1927, p. 9 (La. App. 3d Cir. 10/11/00), 772 So. 2d 181, 185. See also State v. Hooflcin, 476 So. 2d 481, 490 (La. App. 1st Cir. 1985). Ballard made clear in her testimony that she could not recall the incident "step by step." Also, later during her direct examination, Ballard testified that Dejarvis had advised her that the defendant "had taken his mother with him." When the prosecutor asked if those were the words that he used, Ballard responded "I don't recall." After referring to the 911 transcript, Ballard testified that Dejarvis said the defendant had kidnapped his mother. Such testimony was indicative of Ballard's need to rely on the 911 transcript to refresh her memory in order to provide more accurate testimony. The trial court's ruling that Ballard could refer to the 911 transcript to refresh her memory was correct. The defendant's assertion that Ballard did not establish insufficient recollection to enable her to testify fully and accurately is meritless.
The last issue raised by the defendant is that testimony by Demarcus, i.e., that three or four weeks prior to the shooting the defendant had kicked in the door of Jacqueline's apartment, was inadmissible hearsay. According to the defendant, such evidence of a prior bad act prejudiced the defendant because the trier of fact would reasonably assume that since the defendant had kicked in the door on a prior occasion, the defendant kicked in the door again on the night of the shooting.[8] Whether the defendant's contention is properly framed as a hearsay issue or a prior bad-acts issue is immaterial, as no contemporaneous objection was made at trial during the relevant testimony of Demarcus. An irregularity or error cannot be complained of after the verdict unless it was objected to at the time of the occurrence. Accordingly, this argument is not properly preserved for appellate review. LSA-C.E. art. 103(A)(1); LSA-C.Cr.P. art. 841(A). See Young, 99-1264 at p. 9, 764 So. 2d at 1005.
Moreover, we note that on direct examination, the prosecutor did not raise the issue of the defendant's kicking in the door several weeks prior to the shooting. Instead, on cross-examination, defense counsel asked Demarcus if Jerome had ever threatened the defendant. Defense counsel also asked whether Jerome told the defendant he was going to kill him if he came back around. Demarcus responded in the affirmative to both questions. On redirect examination, the prosecutor asked Demarcus whether an incident had occurred that made Jerome so angry with the defendant that he told the defendant not to come around or he would kill him. Demarcus responded that three or four weeks prior to the shooting, the defendant had kicked in the back door. Thus, given defense counsel's questions, the State was entitled to question Demarcus to explain why Jerome was angry and told the defendant not to come around, to rebut any claim that Jerome exhibited hostility toward the defendant without cause or provocation. The issue of Jerome's anger, if any, toward the defendant was raised for the first time on cross-examination and, as such, prompted the prosecutor to explain the source of that anger on redirect examination. Accordingly, the prosecutor's questions did not constitute impermissible references to a prior bad act since defense counsel on crossexamination opened the door regarding the defendant's prior act of violence, which prompted Jerome to tell the defendant to stay away. See State v. Williams, 610 So. 2d 991, 1008-09 (La. App. 1st Cir. 1992), writ denied, 617 So. 2d 930 (La. 1993). See also State v. Taylor, XXXX-XXXX, pp. 17-18 (La. 1/14/03), 838 So. 2d 729, 745-46, cert. denied, 540 U.S. 1103, 124 S. Ct. 1036, 157 L. Ed. 2d 886 (2004); State v. Smart, 2005-814, pp. 12-13 (La. App. 5th Cir. 3/14/06), 926 So. 2d 637, 647-48, writ denied, XXXX-XXXX (La. 11/17/06), 942 So. 2d 533.
We further note that even assuming, arguendo, that Demarcus's testimony about the defendant's prior bad act constituted hearsay, given the testimony of Demarcus identifying the defendant as the person who kicked in his door, was armed with a gun, and threatened to kill both Jacqueline and Jerome on the night of the shooting, as well as the defendant's own testimony wherein he admitted shooting and killing Jerome,[9] such testimony by Demarcus was cumulative and corroborative of other testimony establishing the defendant's guilt. Therefore, even if erroneous, its admission into evidence was harmless beyond a reasonable doubt. LSA-C.Cr.P. art. 921; See State v. Byrd, 540 So. 2d 1110, 1114 (La. App. 1st Cir.), writ denied, 546 So. 2d 169 (La. 1989).
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 1
In his first pro se assignment of error, the defendant argues that the evidence was insufficient to support a conviction of manslaughter. Specifically, the defendant contends that the State did not prove beyond a reasonable doubt that he did not kill Jerome in self-defense.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So. 2d 654, 660; State v. Mussall, 523 So. 2d 1305, 1308-09 (La. 1988). The Jackson v. Virginia standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, pp. 4-5 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144.
While the defendant was charged with second degree murder, he was found guilty of manslaughter. Guilty of manslaughter is a proper responsive verdict for a charge of second degree murder. LSA-C.Cr.P. art. 814(A)(3). Louisiana Revised Statute 14:31(A)(1) defines manslaughter as a homicide which would be either first degree murder or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the factfinder finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances that may reduce the grade of homicide. State v. Maddox, 522 So. 2d 579, 582 (La. App. 1st Cir. 1988). Manslaughter requires the presence of specific intent to kill or inflict great bodily harm. See State v. Hilburn, 512 So. 2d 497, 504 (La. App. 1st Cir.), writ denied, 515 So. 2d 444 (La. 1987).
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan, 94-2503, p. 13 (La. 11/25/96), 684 So. 2d 382, 390. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Patterson, 540 So. 2d 515, 518 (La. App. 1st Cir. 1989).
Louisiana Revised Statute 14:20(A) provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
Louisiana Revised Statute 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
The defendant contends that Jerome had made "serious threats" against him in the past. According to the defendant, on the night of the shooting, Jerome "came at him with a bed post." Thus, he contends, he was justified in killing Jerome because he had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm.
Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. Thus, it is necessary that a determination be made as to whether the circumstances presented support the trial court's finding that the defendant had the specific intent to kill or to inflict great bodily harm. See State v. Spears, 504 So. 2d 974, 977 (La. App. 1st Cir.), writ denied, 507 So. 2d 225 (La. 1987).
Here, the defendant admitted he shot Jerome. The fact that the defendant shot the victim at close range indicates that the defendant clearly had the specific intent to kill or to inflict great bodily harm. See State v. Wallace, 612 So. 2d 183, 190 (La. App. 1st Cir. 1992), writ denied, 614 So. 2d 1253 (La. 1993). Therefore, the only remaining issue in a review of the sufficiency of the evidence is whether the defendant acted in self-defense.
When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill Jerome in self-defense. The guilty verdict of manslaughter indicates that the trial court accepted the testimony of the prosecution witnesses insofar as such testimony established that the defendant did not kill Jerome in self-defense. See Spears, 504 So. 2d at 977-78. It is clear that the trial court rejected the claim of self-defense and concluded that the scenario of self-defense, as suggested by the defendant's own testimony, was not reasonable. See State v. Captville, 448 So. 2d 676, 680 (La. 1984).
Even assuming that Jerome did arm himself with a bedpost, the trial court clearly concluded that the force used by the defendant against Jerome was unreasonable and unjustifiable. Based on the fact that the defendant armed himself with a handgun, kicked in the back door of Jacqueline's home at 4:00 o'clock a.m., and said that he was going to kill Jacqueline and Jerome, a rational trier of fact could have reasonably concluded that the killing was not necessary to save the defendant from the danger envisioned by LSA-R.S. 14:20(1) and/or that the defendant was the aggressor and, as such, was not entitled to claim self-defense. See LSA-R.S. 14:21; State v. Bates, 95-1513, p. 13 (La. App. 1st Cir. 11/8/96), 683 So. 2d 1370, 1377.
Moreover, following the killing, the defendant did not contact the police, but fled. A finding of purposeful misrepresentation, as in the case of flight following an offense, reasonably raises the inference of a "guilty mind." See Captville, 448 So. 2d at 680 n.4.
As the trier of fact, the trial court was free to accept or reject, in whole or in part, the testimony of any witness. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1st Cir. 9/25/98), 721 So. 2d 929, 932. A determination of the weight of the evidence is a question of fact. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. art. V, § 10(B). See Spears, 504 So. 2d at 978. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So. 2d 592, 596 (La. App. 1st Cir. 1985).
After a thorough review of the record, we find that the evidence supports the trial court's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant did not kill Jerome in self-defense and, as such, was guilty of manslaughter.
This pro se assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 2
In his second pro se assignment of error, the defendant argues that the trial court erred in failing to grant a mistrial during the prosecutor's closing argument. Specifically, the defendant contends that a portion of the prosecutor's argument was outside the evidence presented at trial and prejudicial to him.
The statement by the prosecutor at issue regards the trial testimony of Christopher Paul, a neighbor of Jacqueline. When asked what he heard on the night of the shooting, Paul testified, "I heard two gunshots. I heard one  someone yelling, I'll kill you, I'll kill you." In his closing argument, the prosecutor stated, "The neighbor, Chris Paul, heard `I'm going to kill him. I'm going to kill him.' That's this man right here."
Defense counsel made no objections to these statements by the prosecutor. In addition, there was no request for an admonition or motion for mistrial. Therefore, the defendant is deemed to have waived any such error on appeal. LSA-C.Cr.P. art. 841(A). Moreover, the argument is baseless. The prosecutor's statements were not outside the evidence presented at trial. While the syntax was slightly varied, the statements made by Paul and the prosecutor were fundamentally the same, i.e., that Paul heard the voice of a person threatening to kill someone. See State v. Hawkins, 633 So. 2d 301, 306 (La. App. 1st Cir. 1993).
This pro se assignment of error is also without merit.

PRO SE ASSIGNMENT OF ERROR NO. 3
In his third pro se assignment of error, the defendant argues that the trial court erred in admitting other crimes evidence. Specifically, the defendant contends that the State failed to file a notice of intent to introduce evidence that he kicked in the door of Jacqueline's apartment about four weeks prior to the shooting. The defendant further contends that when the State elicited this prior incident through the testimony of Demarcus, its purpose of presenting other crimes evidence was to show the defendant's bad character.
This issue has already been addressed under the second counseled assignment of error. As stated above, the defense opened the door to such testimony during the cross-examination of Demarcus. Furthermore, there was no contemporaneous objection or motion for mistrial by the defendant during the relevant testimony of Demarcus. An irregularity or error cannot be complained of after the verdict unless it was objected to at the time of the occurrence. Accordingly, this argument is not properly preserved for appellate review. LSC.E. art. 103(A)(1); LSA-C.Cr.P. art. 841(A). See State v. Cooks, 97-0999, p. 7 (La. 9/9/98), 720 So. 2d 637, 642, cert. denied, 526 U.S. 1042, 119 S. Ct. 1342, 143 L. Ed. 2d 505 (1999); State v. Sisk, 444 So. 2d 315, 316 (La. App. 1st Cir. 1983), writ denied, 446 So. 2d 1215 (La. 1984).
This pro se assignment of error is also without merit.

PRO SE ASSIGNMENT OF ERROR NO. 4
In his fourth pro se assignment of error, the defendant argues that the trial court erred in permitting the prosecutor to cross-examine him regarding a prior criminal act, namely the incident prior to the shooting wherein the defendant kicked in the door of Jacqueline's apartment. Again, the defendant contends that the State failed to file a notice of intent to introduce other crimes evidence.
During cross-examination of the defendant, the following exchange took place:
Q. Now, isn't [it] a fact that on October 21, 2001, at 1:35 in the morning, a Sunday, again 1:35 in the morning, you went over to that same place, Carrot [sic] Drive, and kicked down the same door?
A. If that's the time of my cousin's wedding, I guess I did.
Q. And isn't it a fact you went into the refrigerator, got a beer and then smashed it on the floor?
A. Yes.
As noted above, defense counsel opened the door to this prior act by the defendant. Furthermore, there was no contemporaneous objection or motion for mistrial by the defendant during the relevant testimony of the defendant.[10] An irregularity or error cannot be complained of after the verdict unless it was objected to at the time of the occurrence. Accordingly, this argument is not properly preserved for appellate review. LSA-C.E. art. 103(A)(1); LSA-C.Cr.P. art. 841(A). See Cooks, 97-0999 at p. 7, 720 So. 2d at 642; Sisk, 444 So. 2d at 316.
This pro se assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] There were four unattached bedposts because the bed in the living room had not yet been assembled.
[2] The defendant's reliance on State v. Wilkerson, 533 So. 2d 136 (La. App. 1st Cir. 1988) is misplaced. Wilkerson did not involve the issue of choice between the type of trial preferred, but instead involved review of a guilty plea, which waives the right to trial altogether. Such a guilty plea by a defendant requires a knowing and voluntary waiver of his Boykin trilogy of rights.
[3] The defendant mistakenly refers to Dejarvis as Demarcus in his brief.
[4] The defendant is mistaken. Dejarvis stated he had already missed taking his final exams. Thus, after being advised by the trial court that the "lawyer who wants you here is going to have control of your coming and going," and that he remained subject to the court's order of sequestration, he was dismissed by the trial court, not so that he could return to school to take his exams, but because he was finished testifying at trial.
[5] The objection was based only on the grounds of confrontation, not the fact that Dejarvis perceived his mother to have been kidnapped. This distinction was made clear by defense counsel when he explained his reason for objecting:

Judge, on this I'm going to object to the answer because, you know, I have a confrontation problem. We had D.J. here. And apparently his comment, I don't mind telling the judge, he felt his mother was kidnapped. That's kind of a legal conclusion. And I don't have the  now I don't have the ability to cross[-]examine D.J. unless I call him back. It's a confrontation 
[6] The only testimony remotely suggestive of hearsay is the following: "Q. Okay. Did your mother ever talk about getting back with him? A. No." For nonverbal conduct to potentially be hearsay, it must be assertive conduct, that is, a message must be intended. We find Demarcus's mother's complete lack of communication regarding reconciling with the defendant, at least to the extent perceived by Demarcus, was nonassertive conduct. Such nonassertive conduct, where no message is intended, is, by definition, not hearsay. See L.S.A.-C.E. art. 801(A) & Official Comment (c) to Article 801(A).
[7] Louisiana Code of Evidence Article 803(5) provides:

Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
[8] As correctly pointed out by the defendant, the State did not give notice of its intent to introduce at trial the defendant's prior bad act.
[9] On direct examination, the defendant stated, "At that time I snatched the gun out of my pocket. And he went and got  he hit me again. I throwed [sic] the gun up in an aiming position. I guess it went off." Later during direct examination, when defense counsel asked the defendant why he tried to cock his gun again after Jerome was already shot and lying on the floor, the defendant stated, "I was going to put it in my mouth and pull the trigger. I mean, this man here  I had took an innocent man's life behind  for a  (unintelligible word). Don't make no sense."
[10] In his pro se brief, the defendant alleges that "trial counsel did previously move for a mistrial on the inadmissibility of other crimes evidence, although no mistrial was granted." Our review of the record indicates that no motion for mistrial was made by defense counsel.