504 So.2d 1036 (1987)
STATE of Louisiana
v.
Winston TEETER
No. 86 KA 1108.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
*1037 William R. Campbell, Jr., New Orleans, for State of La.
*1038 S. Austin McElroy, Covington, for appellant.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
Winston Teeter was charged by indictment with three counts of theft of an amount in excess of $500.00, in violation of LSA-R.S. 14:67. In the same indictment, which contained a total of eight counts, Horace Hopkins, Billy Sere, and Jim Sere were also indicted. All of the defendants pled not guilty and were tried together. Billy Sere, Jim Sere, and the defendant elected trial by jury, while Horace Hopkins elected trial by judge. After most of the prosecution's case had been presented to the jury, Horace Hopkins reached an agreement with the prosecutor, and all of the charges in the indictment against Horace Hopkins were nolle prosequied. In exchange therefor, Horace Hopkins agreed to testify truthfully against the three remaining defendants and to fully reimburse the money to the victims.
Concerning the defendant herein, the jury returned guilty verdicts on all three of the counts naming him as a defendant. For each of the three counts, he received a sentence of two years at hard labor and a fine of $2,500.00 and court costs, or in default of the fine and costs, an additional one year at hard labor. The trial court imposed the sentences concurrently and the fines, costs, and default sentences consecutively. Co-defendants, Billy and Jim Sere, were also convicted on several counts and took a separate appeal.[1] The defendant has appealed, alleging three assignments of error, as follows:
1. Ineffective assistance of counsel.
2. The defendant was prejudiced by a conflict of interest which existed because his trial counsel represented all three defendants.
3. Insufficient evidence.

FACTS
Billy Sere, Jim Sere, and the defendant, Winston Teeter, were employees of Covington Mobile Homes, Inc. Billy Sere and Jim Sere, father and son, respectively, were hired as salesmen for Covington Mobile Homes, Inc., while the defendant was hired to perform administrative tasks such as financing, insurance, and delivery. Horace Hopkins, a co-defendant, owned two-thirds of Covington Mobile Homes, Inc., and Jack Collins owned the remaining one-third. On eight different occasions between October 2, 1982, and February 24, 1983, prospective mobile home purchasers made down payments to Covington Mobile Homes, Inc., for mobile homes and trailers which were never delivered to them. Eight such down payments are reflected in the eight separate counts of the indictment returned against Horace Hopkins, Billy Sere, Jim Sere, and the defendant, Winston Teeter. On each of these eight occasions, the prospective buyer (or buyers) made a down payment with the understanding that financing arrangements would be made and the mobile home or trailer delivered shortly thereafter. Some of these down payments, ranging from $500.00 to $3000.00, were made with checks, while others were paid in cash. However, none of the above down payments resulted in delivery of a trailer or mobile home from Covington Mobile Homes, Inc., nor were these eight down payments refunded to the prospective buyers. Although all of these prospective buyers engaged in numerous courses of action to force Covington Mobile Homes to deliver a trailer or refund their deposit, none of them were successful.
Concerning the defendant, three prospective buyers, George Bezue, Joseph Manuel, and Wilson Fuselier, testified against him at the trial. George Bezue testified that he gave the defendant a $2,000.00 cash deposit for a specific trailer in October, 1982. He testified that the defendant promised to arrange the financing and deliver the trailer a few days later. Joseph Manuel testified that his mother, Judy Rice, made three cash down payments of $1,000.00 each to *1039 Covington Mobile Homes, Inc., in October, 1982. Joseph Manuel testified that the first down payment was made to Winston Teeter and Billy Sere, the second to Billy Sere alone, and the third to Winston Teeter alone. Wilson Fuselier testified that he and his wife went to Covington Mobile Homes, Inc., in January, 1983, selected a trailer, and made a $2,000.00 down payment by check. He testified that, when filling out the check, the defendant informed him to leave the payee's name blank, which he did. The cancelled check, which was introduced into evidence, listed the payee as Winston Teeter.
Near the end of the prosecution's presentation of evidence, Horace Hopkins reached an agreement with the prosecutor in which, in return for the charges against him being nolle prosequied, Horace Hopkins agreed to testify against the remaining defendants and fully reimburse the prospective buyers for the eight down payments discussed above. Horace Hopkins testified that Covington Mobile Homes, Inc., was in financial trouble in the latter part of 1982, but could have been reorganized and made into a profitable business venture. He testified that until he heard their testimony at the trial he was only familiar with some, but not all, of the problems and complaints made by these eight prospective buyers. He testified that it was at this point (after hearing these detailed complaints during trial) that he decided to refund the entire amount owed by Covington Mobile Homes, Inc., to the eight prospective buyers.
The defendant did not testify at the trial. Co-defendant Billy Sere attempted to explain why some of the down payment checks were written to the defendants rather than Covington Mobile Homes, Inc. He testified that the business had a cash flow problem and problems with its checking accounts and, therefore, down payments were written to the defendants, who then cashed the checks in order to pay bills or deposit into the business checking accounts. He also testified that cash down payments were also used to pay the debts and other minor everyday expenses of the business. He testified that the defendants never stole any money from the business and that he informed Horace Hopkins that many of the above down payments should have been refunded to the prospective buyers. Finally, Billy Sere testified that the defendants attempted to complete all of the sales to the eight prospective buyers above but were unsuccessful for numerous reasons, including: factory order delays, bad weather, problems in obtaining financing, customers changing their minds, etc.
On rebuttal, many of the prospective buyers testified that the excuses given by Billy Sere for the unsuccessful completion of these transactions were untrue. Furthermore, contrary to Billy Sere's testimony, Horace Hopkins testified that he never instructed the defendants to pay bills in cash. He also produced numerous cancelled checks which indicated that most of the company's bills had been paid by check, rather than cash. Horace Hopkins testified that Billy Sere had not informed him about most of the demands made by these prospective purchasers for the return of their down payments. Finally, Horace Hopkins testified that he was "shocked" and "amazed" when he listened to the testimony of the prospective buyers. He testified that he learned that one of the prospective buyers had been "suckered" when he discovered a contract to sell a certain type of trailer which Covington Mobile Homes, Inc., did not even carry.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:
In these assignments of error, the defendant contends that a conflict of interest at trial, as well as other reasons, combined to deprive him of effective assistance of counsel at trial.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief (formerly by writ of habeas corpus) in the district court where a full evidentiary hearing may be conducted. State v. Williams, 464 So.2d 451, 455 (La.App. 1st Cir.1985). However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be *1040 addressed in the interest of judicial economy. State v. Bourgeois, 451 So.2d 172 (La.App. 1st Cir.), writ denied, 457 So.2d 18 (La.1984).[2]
The standard of review on a claim of ineffective assistance of counsel is a deficiency in counsel's performance giving rise to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assignment of error number one, defendant contends that he was deprived of the effective assistance of counsel at trial. In assignment of error number two, the defendant contends that because the trial attorney represented the defendant as well as Billy Sere and Jim Sere, the defendant was prejudiced by a conflict of interest arising from the joint representation. Defendant claims that the ineffective assistance of counsel was due to the above conflict of interest as well as other reasons, both in the record and outside the record.
Defendant contends the deficiencies in the trial attorney's performance are supported by the record. The first deficiency is the trial attorney's failure to subpoena the business records of Covington Mobile Homes, Inc., All American, Inc., and Horace Hopkins prior to trial. Defendant argues that these records were necessary to support his defense that the down payments he received from customers were used to pay the bills of Covington Mobile Homes, Inc. d/b/a All American, Inc. According to the trial transcript, during Hopkins' testimony the trial attorney made a request for the corporate records Horace Hopkins possessed, which were in Hopkins' car at that time; contrary to defendant's assertion in his brief, the court ordered Hopkins to make those records available to the trial attorney. Although the corporate records were then available to the trial attorney, he did not introduce them to support his defense. The trial record does not show whether this was due to the failure of the corporate records to support the defense or due to the trial attorney's failure to examine the records. Thus, this allegation of a deficiency in the trial attorney's performance is not supported by the record alone.
The second deficiency which defendant contends is evident from the record is the trial attorney's failure to object to the introduction into evidence of the petition by the State Fire Marshall seeking an injunction against Covington Mobile Homes as a dealer and Winston Teeter as a salesman; the petition contained the allegation "that the continued operation [sic] sale of mobile homes by Covington Mobile Homes, Inc., and Winston Teeter presented a clear and present danger to the welfare of the public...." Defendant argues that the petition was irrelevant and that it served to introduce evidence of Teeter's character, which was not at issue. The record shows that the trial attorney did object to the use of the petition to show the character of Teeter. Furthermore, defendant's failure to object to the petition on grounds of relevancy is not unreasonable. The State introduced the petition for injunction in conjunction with Hopkins' testimony dealing with the down payment of Fuselier, which Teeter received on January 17, 1983, two days before the injunction was filed. Thus, the petition for injunction was relevant as to defendant's intent to deliver a trailer to Fuselier.
Even assuming that the trial attorney's actions were erroneous, these alleged deficiencies are not sufficient to create a reasonable probability that the result of the proceeding would have been different. The State refuted the defendant's claims that he used the customers' down payments to pay the bills of Covington Mobile Homes, Inc., with evidence from the corporation's records and from Hopkins' testimony.
The other allegations dealing with ineffective assistance of counsel which were raised in defendant's brief cannot be sufficiently *1041 investigated from an inspection of the record alone. In fact, by his own admission in brief, the defendant labels two of the most serious allegations against his trial attorney as "matters outside the record." Defendant contends that he was prejudiced due to his failure to testify; he argues that his trial counsel prevented him from testifying because his testimony would have conflicted with the testimony of Billy Sere and would have been damaging to his co-defendants.
However, the record itself does not indicate the reasons behind the defendant's decision not to testify. Furthermore, the record alone gives no indication that a conflict of interest existed between the defendants. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the record, could these allegations be sufficiently investigated. Therefore, we conclude that this claim of ineffective assistance of counsel would be more properly raised by an application for post conviction relief.
For the above reasons, these assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE:
The defendant was convicted of three counts of theft in excess of $500.00. In this assignment of error, the defendant contends that the evidence was insufficient to support these convictions.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
LSA-R.S. 14:67 provides, in pertinent part:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both....
When there has been a misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or takings shall determine the grade of the offense.
In his brief, the defendant contends that the prosecution did not prove "an intent to permanently deprive the victims of what was misappropriated or taken." The defendant relies on State v. Hoffer, 420 So.2d 1090 (La.1982), which involved a factual situation somewhat similar to the instant case. In Hoffer, supra, the defendant, acting as an auto dealer, attended an auction in Lafayette and purchased approximately fourteen cars, although he was neither licensed nor bonded. He signed bank drafts for the cars, received the titles, and returned the cars to his used car dealership in Baton Rouge. Of the fourteen bank drafts written to the seller by the defendant, only three were honored. The remaining eleven, totaling $7,400.00, were returned unpaid and remained unpaid at the time of the trial. In Hoffer, supra, the Supreme Court concluded that the defendant's misrepresentation of his status (i.e., that he was a licensed and bonded auto dealer) and his returning the cars to Baton Rouge to his used car business did not prove, beyond a reasonable doubt, that the defendant intended to permanently deprive the seller of the remaining $7,400.00 owed to him. In reaching this conclusion, the court pointed out that three of the fourteen drafts given by defendant were paid; there was also evidence that the defendant had agreed prior to the purchase that the actual owner of the car dealership would pay the drafts. Thus, in Hoffer the court found *1042 that the evidence did not exclude every reasonable hypothesis of innocence pertaining to whether the defendant had the requisite intent to permanently deprive.
However, we believe that the instant case can be distinguished from the situation in Hoffer, supra. In the instant case, most of the eight down payments listed in the indictment were made in cash or in the form of a check payable to one of the defendants. The defendant did not testify at trial. However, Billy Sere testified that the cash down payments were used to pay the bills and expenses of the business or were deposited into the company checking account. He also testified that those down payments made in the form of checks payable to the defendants were cashed by them and also used to pay bills and everyday expenses of the business. If this were true, the defendant's contention that these down payments could have been refunded to the prospective buyers from the proceeds of future sales might be plausible. Using these down payments to pay bills and everyday expenses of the business would not rule out the possibility that the defendants intended to deliver trailers and mobile homes to the prospective buyers or at least refund their money. However, the testimony of Horace Hopkins clearly indicates that he never instructed the defendants to pay company bills with cash, nor did he instruct the defendants to request that down payments in the form of checks be made payable to the defendants. Many of the prospective buyers, including those who had given their down payments to the defendant, testified that, after lengthy delays in the delivery of their mobile homes, they experienced difficulty in contacting the defendants and requesting the return of their down payments. Billy Sere testified that the defendants did not steal these down payments. However, the testimony of Horace Hopkins indicates that, contrary to the testimony of Billy Sere, most of the company's expenses were paid by check. Especially damaging was the testimony by Horace Hopkins that one prospective buyer's order listed a type of trailer which Covington Mobile Homes, Inc., did not even carry and listed a bank with which the company did not do business. The testimony of Horace Hopkins indicated that the company records could not substantiate Billy Sere's claim that the missing funds from these eight down payments were used to pay bills or deposited in the company checking account.
"Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency." State v. Mullins, 464 So.2d 459, 463 (La.App. 1st Cir.1985). A determination of the weight of the evidence is a question of fact. State v. Korman, supra. This Court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. Art. 5, § 10(B). The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Mullins, supra.
The guilty verdict returned in this case indicates that the jury accepted the testimony of the prosecution witnesses while rejecting the testimony of the defense witnesses. The trier of fact remains free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir. 1984).
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded that the prosecution carried its burden of proving beyond a reasonable doubt that the defendant committed theft by misappropriating the funds from these down payments with an intent to permanently deprive the prospective buyers of these funds.
For the above reasons, this assignment of error is without merit.
The conviction is affirmed.
AFFIRMED.
NOTES
[1] See State v. Sere, 476 So.2d 495 (La.App. 1st Cir.1985).
[2] State v. Bourgeois, supra, was cited in State v. Truitt, 500 So.2d 355 (La.1987).