# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 15-779

STATE OF LOUISIANA

VERSUS

READO NARGO
A/K/A RENALDO NARGO

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 19287
HONORABLE JUDGE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Van Hardin Kyzar**
**District Attorney – 10th Judicial District**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**Telephone:  (318) 357-2214**
**COUNSEL FOR:**
     **Plaintiff/Appellee - State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**Telephone:  (337) 436-2900**
**COUNSEL FOR:**
     **Defendant/Appellant – Renaldo Nargo a/k/a Reado Nargo**

**Reado Nargo**
**a/k/a Renaldo Nargo**
**Wolf #4**
**Louisiana State Prison**
**Angola, LA 70712**
**Defendant/Appellant**

**THIBODEAUX, Chief Judge.**

Defendant Reado Nargo was charged by grand jury indictment with the second degree murders of Johnny L. Brimzy (John Brimzy) and Stanley J. Brimzy in violation of La.R.S. 14:30.1. Nargo pled not guilty to both counts. After a trial by jury, he was found guilty of the second degree murder of John Brimzy and guilty of the responsive verdict of manslaughter for the killing of Stanley Brimzy. Nargo was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence for the murder of John Brimzy, and forty years at hard labor for the manslaughter of Stanley Brimzy, to run consecutively. His Motion to Reconsider Sentence was denied.

Nargo now appeals his convictions, arguing that the trial court erred when it determined the recorded and non-recorded statements allegedly made by Nargo were freely and voluntarily made, and thus admissible; that evidence was improperly published to the jury prior to their authentication, identification, or admission into evidence, therefore making it unavailable for appellate review; that trial counsel rendered ineffective assistance of counsel by failing to object to the publishing of this evidence; and that the trial court erred in failing to assure that discussions and arguments of counsel made during sidebar proceedings were recorded and preserved for appellate review.

After the record was lodged in this court, appellate counsel filed two motions to supplement the appellate record, which were granted. In the first motion to supplement, appellate counsel requested that this court order the court reporter to prepare a transcript of three bench conferences, and in the second, a

transcription of statements made by Nargo and played for the jury that was not admitted into evidence. For the following reasons, we affirm.

## I.

## ISSUES

We must determine:

(1) whether the trial court erred in concluding that Nargo knowingly, intelligently, and voluntarily gave the recorded and non-recorded statements after waiving his rights;

(2) whether the trial court erred in considering recordings which had not been admitted into evidence at the admissibility hearing in reaching its decision that the statements made by Nargo were admissible at trial;

(3) whether the trial court erred in publishing the recorded statements to the jury prior to their authentication or admission into evidence;

(4) whether trial counsel's performance fell below that guaranteed by the Sixth Amendment; and

(5) whether the trial court erred in failing to assure sidebar discussions were recorded and preserved, resulting in the denial of Nargo's constitutional right on appeal.

## II.

## FACTS AND PROCEDURAL HISTORY

In the early morning of January 26, 2012, Detective Michael Wilson received a call about a shooting in Campti, Louisiana. Upon arrival at the scene, Detective Wilson found the body of Stanley Brimzy in the road in front of Claudine Caldwell's trailer home (Nargo's girlfriend). The body of a second victim, John Brimzy, was found later that morning approximately 100 yards away

2

from the trailer home. It was established that Stanley Brimzy was killed by a single gunshot to the head, and that John Brimzy suffered three gunshot wounds to the head.

Caldwell testified that she was at work when she received a call from Nargo about a break-in at her home. Caldwell returned home, and Nargo informed her that his AK-47 firearm had been stolen, and that he believed Stanley and John Brimzy were responsible. Soon thereafter, Stanley and John Brimzy approached Caldwell's trailer home in a truck. Caldwell testified that she heard Nargo ask Nathan Davis, who was also present at the scene, where "the heat" (pistol) was. Davis testified that he gave Nargo a pistol. Sylvester Millage, also present at the scene, testified that he also saw Nargo in possession of the pistol given to him by Davis. Caldwell, Davis, and Millage each testified that they witnessed Nargo approach Stanley while holding the pistol. Moments later, Caldwell heard a gunshot, and saw John Brimzy flee from the truck. Sylvester testified that he saw Nargo running behind John Brimzy and shooting at him. John Brimzy was later found dead across the nearby railroad tracks. After the killings, Nargo was brought in for questioning by Detective Wilson, at which time he admitted to killing both victims. During questioning, recorded and non-recorded statements were given.

III.

## LAW AND DISCUSSION

**Failure to Admit the Recordings into Evidence**

Nargo first contends that the trial court erred in considering recordings which had not been admitted into evidence at the admissibility hearing in reaching

its decision that the statements made by Nargo were voluntary and, therefore, admissible at trial. We disagree.

In *State v. Lloyd*, 48,914 (La.App. 2 Cir. 1/14/15), 161 So.3d 879, *writ denied*, 15-307 (La. 11/30/15), 184 So.3d 33, the second circuit found that it could consider on appeal audio recordings that were played for the jury but not admitted into evidence. The defendant argued that while the recordings were played in court, they should not have been considered by the trial court. *Id.* The *Lloyd* court offers us guidance, and states the following:

> At trial, the prosecution played recordings of Mrs. Lloyd's call to the police and the defendant's interview with Detective Strickland on the night the offense occurred. Defendant's counsel did not object to the use of the recordings at trial. With regard to the defendant's statement to Detective Strickland, the record is clear that defense counsel wanted the recording played in open court so the trial court could hear it. However, the prosecution failed to formally introduce the recordings into evidence after they were played in the trial court and they were not included in the record on appeal. In this court defense counsel filed a motion to supplement the record, noting the absence of the recordings in the record.

*Id.* at 892. The second circuit found that since the recordings were played in open court without objection by the defendant, the recordings were tacitly admitted and the trial court did not err in considering them. *Lloyd*, 161 So.3d 879. *See State v. Rodriguez*, 554 So.2d 269 (La.App. 3 Cir. 1989), *writ granted in part and remanded*, 558 So.2d 595 (La.1990).[1]

During the State's questioning of Detective Wilson, a hearing was held outside of the jury's presence regarding the admissibility of inculpatory statements made by Nargo. After hearing testimony and argument, the trial court

---

[1] A state trooper testified about the contents of her report, which was not admitted into evidence. The defendant failed to object at trial, and the appellate court found that any right to attack the conviction based on the alleged error had been waived.

4

found that Nargo's statements were freely and voluntarily given after being fully advised of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). Subsequently, the State played the recording of Nargo's statements to the jury, but did not seek to admit the recording into evidence. As previously stated, no objection was made by the defense regarding this omission. Consequently, Nargo's statements were properly considered by the trial court in ruling on the voluntariness of those statements.

*Preservation for Appellate Review*

Nargo further argues that because the recordings were not properly admitted into evidence, they are unavailable for review by either appellate counsel or the appellate court, thus denying him full appellate review.

While this court has previously held in *State in the Interest of J.C.R.*, 14-1146 (La.App. 3 Cir. 3/4/15), 157 So.3d 1284, that exhibits played during an adjudication hearing but not admitted into evidence were not preserved for appellate review, the present appeal is distinguishable. In *J.C.R.*, the trial record would have been incomplete without the audio exhibits played during the adjudication hearing. Here, because transcripts of the statements are available, the record is complete with no indication of prejudice. Moreover, Nargo's trial counsel used the transcript at length in his cross-examination of Detective Wilson, and it was the *defense* that filed the motion to supplement the record such that the transcript is now part of the record on appeal. Accordingly, and in following *Lloyd*, the record is complete, as the statements were tacitly admitted into evidence.

5

*Publication of the Statements to the Jury*

Nargo next asserts that it was improper for the jury to consider his statements since they were not properly authenticated and formally introduced into evidence. He contends that even though Detective Wilson testified that he had listened to the recordings, he never identified the voice on the recordings or acknowledged that they were recordings he had made. Because we have concluded that Nargo's recorded statements were tacitly admitted into evidence, we shall consider only the issue of authenticity.

While defense counsel objected to the admissibility of the substance of Nargo's statements based on their alleged involuntariness, which will be later discussed, there was no contemporaneous objection based on lack of authenticity. Defense counsel also did not object to the failure to formally admit the recording into evidence. When the statements were referenced later in Detective Wilson's testimony, defense counsel asked how the statements were marked in evidence. When the State informed defense counsel that the statements were not marked, but were part of the transcript, defense counsel failed to object.

Further, we find there was sufficient evidence elicited during the testimony of Detective Wilson to authenticate the statements. In particular, certain time stamps on the recordings were referenced at the admissibility hearing. Additionally, defense counsel was provided the audio recording during the discovery process and well in advance of trial. When the recording was played for the jury, the State asked Detective Wilson if the tape was the initial recording of the conversation he had with Nargo. Detective Wilson confirmed that it was.

Accordingly, we find the trial court properly considered recordings which had not been formally admitted into evidence, the recorded statements were properly preserved for appellate review, and were properly published to the jury.

**Ineffective Assistance of Counsel**

Because defense counsel did not contemporaneously object to the authenticity of the recorded statements when published to the jury, Nargo is precluded from raising these alleged errors on appeal unless it can be determined that defense counsel was ineffective for failing to object. Nargo now alleges ineffective assistance of counsel.

"The standard of review on a claim of ineffective assistance of counsel is a deficiency in counsel's performance giving rise to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Teeter*, 504 So.2d 1036, 1040 (La.App. 1 Cir. 1987) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)).

> A criminal defendant is guaranteed the effective assistance of counsel. United States Sixth Amendment; La. Const. art. I, § 13; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Washington*, 491 So.2d 1337 (La. 1986). To establish a claim for ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, that counsel's professional errors resulted in prejudice to the extent that it undermined the functioning of the adversarial process and rendered the verdict suspect. *Strickland v. Washington, supra*; *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed. 2d 180 (1993).

> A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal. *E.g., State v. Prudholm*, 446 So.2d

729 (La.1984). However, when the record is sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate. *E.g.*, *State v. Hamilton*, 92-2639 (La. 7/1/97), 669 So.2d 29, 32-35.

*State v. Bright*, 98-398, pp. 40-41 (La. 4/11/00), 776 So.2d 1134, 1157, *reversed on other grounds*, 02-2793 (La. 5/25/04), 875 So.2d 37.

Nargo maintains a new trial is warranted because it is impossible to determine what effect, if any, the recordings had on the jury's verdict. Appellate counsel argues that Detective Wilson's testimony regarding Nargo's waiver of his rights was inconsistent. Detective Wilson testified on direct examination that before the second recording he did not re-read *Miranda* rights to Nargo or obtain a second waiver. On cross-examination, however, he testified that he did discuss *Miranda* rights at the beginning of the second recording. Appellate counsel also argues that the first recording clarifies that Nargo's signature on the waiver of rights form should not have been considered a voluntary waiver of his right to remain silent, but rather an acknowledgment that he had been read the waiver section. Thus, without the recordings, the court was provided conflicting testimony.

Because we find appellate counsel fails to sufficiently prove Nargo was prejudiced by defense counsel's alleged errors, it is unnecessary to determine if defense counsel in fact erred in failing to make these objections. We conclude there is no merit to the ineffective assistance of counsel claim.

8

**Voluntariness of the Statements**

Nargo also maintains that the trial court erred in finding that both his recorded and non-recorded statements given to detectives were freely and voluntarily made, and thus were inadmissible.

In *State v. Fisher*, 97-1133, p. 4 (La. 9/9/98), 720 So.2d 1179, 1182, the supreme court explained:

> A trial judge's ruling on a motion to suppress a confession is entitled to deference, but only if it is supported by the evidence. *State v. Carter*, 94-2859, p. 24 (La. 11/27/95); 664 So.2d 367, 385. A reviewing court may consider the evidence presented at trial in addition to the evidence presented at the hearing on the motion to suppress. *State v. Green*, 94-0887, p. 11 (La. 5/22/95); 655 So.2d 272, 280.

Furthermore, in *State v. Blank*, 04-204, p. 10 (La. 4/11/07), 955 So.2d 90, 103, *cert. denied*, 552 U.S. 994, 128 S.Ct. 494 (2007), the supreme court stated:

> A trial court's finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not supported by evidence. *State v. Benoit*, 440 So.2d 129, 131 (La.1983); *State v. English*, 582 So.2d 1358, 1364 (La.App. 2nd Cir. 1991), *writ denied*, 584 So.2d 1172 (La.1991). Credibility determinations lie within the sound discretion of the trial court and its rulings will not be disturbed unless clearly contrary to the evidence. [*State v. Vessell*, 450 So.2d 938, 943 (La. 1984)].

Detective Wilson testified that he brought Nargo in for questioning and advised him of his *Miranda* rights. Nargo thereafter signed a written *Miranda* warning, indicating that he had read and understood his rights. He additionally signed a portion of the form which indicated that he waived his rights. The following exchange occurred:

DETECTIVE WILSON: Before we ask any questions. You must understand your rights. You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to talk to a lawyer, and have him present with you before we ask you any questions and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before questioning, if you wish. If you decide to answer questions now, without a lawyer present, you still have the right to stop (inaudible) at any time. You also have the right to stop (inaudible) at any time (inaudible), okay?

MR. NARGO: (No response recorded).

DETECTIVE WILSON: Are you all right?

MR. NARGO: (Crying).

DETECTIVE WILSON: Okay. I need your signature right here, Mr. Nargo stating I read you these rights, and you understand them. (Inaudible) there by that X. Okay, and go ahead and continue to the bottom of the page which is the Waiver of the Rights. (Inaudible) you've read the statement of your rights, and you understand what your rights are. (Inaudible) make a statement and answer questions. You do not want a lawyer at this time. You understand and know what you are doing. No promises or threats have been made to you. No pressure or coercion of any kind has been used against you. Is that correct?

MR. NARGO: (No response recorded).

DETECTIVE WILSON: Okay…(inaudible) signature now… (inaudible) … sign that. Just confirming that I read you the waiver of your rights.

MR. NARGO: (Inaudible).

DETECTIVE WILSON: Do what now?

MR. NARGO: (Inaudible) people. I ain't answering no questions till my people get here (inaudible), man (inaudible).

DETECTIVE WILSON: Okay, you say, you're not going to answer any questions until your people get there, right?

MR. NARGO: (Inaudible).

DETECTIVE WILSON: Okay.

MR. NARGO: I need that favor man. (Inaudible). . . please man. Please. . . cause once I do this, I ain't gonna be wanting to sit in here no longer man.

When Nargo requested to speak with his "people," Detective Wilson immediately ceased questioning and allowed him to speak with Caldwell. After approximately ten minutes, Nargo indicated that he wished to continue speaking with Detective Wilson. From this point, Nargo never indicated that he did not wish to talk or that he wanted a lawyer. Detective Wilson testified that he did not threaten or coerce Nargo at any point during questioning, and that Nargo spoke with him freely and voluntarily. On cross-examination at the admissibility hearing, Detective Wilson testified that although Nargo was crying at the time, he signed the rights form freely. He also explained that Nargo was not consistently crying throughout questioning. Although he did not ask Nargo to sign another waiver between the pausing of the first recording and the start of the second recording, Nargo was once again advised of his *Miranda* warnings at the start of the second recording. Approximately one hour passed between the two recordings.

Nargo argues that his initial signing of the *Miranda* form did not equate to a knowing and voluntary waiver of his rights because he was crying at the time and because he refused to speak with police until he was able to speak with his family. This, Nargo argued, indicated that he was exercising his right to remain silent. He, thus, concludes that the inculpatory statements given to Detective Wilson after he exercised his right to remain silent should not have been admitted. Further, Nargo argues that there was no waiver of his right to remain silent until the second recorded statement, and that any statement made before that

11

one, when he acknowledged he was waiving his right to remain silent, was inadmissible. Appellate counsel maintains that although Nargo signed the waiver form, this was not a waiver of his rights, but instead an acknowledgment that he had received and read the form.

We find, however, that because Nargo signed the *Miranda* form during the first recording and had been advised of his *Miranda* warnings at the start of his second statement, that his statements were freely made. While Nargo makes the argument that he should have been advised of his rights once more prior to the unrecorded oral statement in which he confessed to killing both victims, we find jurisprudence does not require that *Miranda* warnings be repeated each time a suspect is questioned, absent a showing of coercion by police. *See State v. Moseley*, 587 So.2d 46 (La.App. 2 Cir.), *writ denied*, 589 So.2d 1006 (La.1991).

Although Nargo cried during questioning, we find no indication that this emotional distress was so great that it overcame the free and voluntary nature of Nargo's confession. *See State v. Weeks*, 345 So.2d 26 (La.1977) (where the court found that despite defendant's contention that the statements were involuntary because she was upset and stressed, the record amply supported a finding that the defendant was sufficiently in possession of her mental faculties to make the statements voluntary).

We further find that although Nargo requested to speak with "his people," consequently interrupting questioning, this was not necessarily an invocation of his right to remain silent which required another reading of his *Miranda* rights prior to subsequent questioning. However, even if Nargo's request did constitute the invocation of his right to remain silent, this invocation does not permanently bar officers from reinitiating contact/questioning. *See State v.*

*Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98), 709 So.2d 213, *writ denied*, 98-582 (La. 7/2/98), 724 So.2d 202. The appropriate reinitiation of contact depends on

> who initiates the further questioning, the time delay between the original request and subsequent interrogation, whether *Miranda* warnings were given before each separate interrogation, whether waiver of rights forms were signed, and whether pressures were asserted on the accused by the police between the time he invoked his right and the subsequent interrogation.

*Id*. at 218. In the present case, however, there is no indication that Detective Wilson pressured Nargo to speak with him after he spoke with Caldwell. According to Detective Wilson's testimony, Nargo voluntarily resumed talking to Detective Wilson and offered a confession without prompting. Nargo also reaffirmed that he was advised of his *Miranda* rights at the start of the second recording.

While the transcript reveals Nargo's lack of response when first advised of his *Miranda* rights, we find a lack of response does not necessarily indicate a lack of understanding. *See State v. Pennington*, 12-804 (La.App. 1 Cir. 2/15/13) (unpublished opinion), *writ denied*, 13-838 (La. 11/1/13), 125 So.3d 420. There is no indication in the transcript or in Detective Wilson's testimony that Nargo lacked an understanding of any of his rights. There is additionally no indication that Nargo was under any duress at the time in which he signed the rights form or at any other time during his questioning.

Accordingly, we find the trial court did not err in finding Nargo's statements were freely and voluntarily given.

**Failure to Record Sidebar Conversations**

Nargo finally contends that his constitutional right to a full appeal has been denied by the trial court's failure to assure that discussions and arguments made by trial counsel during sidebar proceedings were recorded and preserved for appellate review. Appellate counsel specifically cites to three unrecorded bench conferences. We find this argument lacks merit.

Louisiana Code of Criminal Procedure Article 843 requires the trial court to "record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."

In *State v. Pinion*, 06-2346, pp. 7-8 (La. 10/26/07), 968 So.2d 131, 134-35, the supreme court concluded that "the failure to record bench conferences will ordinarily not affect the direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant." *See State v. Castleberry*, 98-1388 (La. 4/13/99), 758 So.2d 749, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220 (1999). "The Court has instead conducted a case-specific inquiry to determine whether the failure to record the conferences results in actual prejudice to the defendant's appeal." *Pinion*, 968 So.2d at 134.

Nargo first notes that an unrecorded bench conference occurred during opening statements. Later, however, the trial court stated for the record that defense counsel no longer wanted to call attention to the issue, and simply requested a jury instruction that opening and closing statements are not evidence. The State contends this resolution did concern the unrecorded bench conference during opening statements.

14

The second unrecorded bench conference occurred at the request of defense counsel during the testimony of a witness.  Nargo maintains that following the bench conference the court took a recess, excusing the jurors.  Following their dismissal, the judge advised the court observers to refrain from showing emotion during the display of evidence.  Nargo offers no further comment or argument as to this bench conference.

Finally, the third bench conference occurred during the State's questioning of Caldwell.  Nargo notes that when questioning resumed after the bench conference, the prosecution continued to ask Caldwell about what she told police.  Caldwell recounted her knowledge of what transpired after Stanley Brimzy was shot.  Once more, Nargo offers no further comment or argument as to this bench conference.

Nargo maintains the contents of the non-recorded bench conferences specifically mentioned were necessary for appellate counsel, who was not trial counsel, to properly review the case for potential errors.  Nargo fails to demonstrate, however, what discernible impact these bench conferences had on his trial, and, thus, there is not sufficient prejudice to warrant a new trial.  This assignment of error lacks merit.

IV.

**ERRORS PATENT**

We have reviewed this matter for errors patent.  We find none.

V.

## **CONCLUSION**

Accordingly, we affirm Defendant's convictions for the second degree murder of Johnny Brimzy and for the manslaughter of Stanley Brimzy.

**AFFIRMED**.